## ALLAH FARMS, INC. v. HORNER.

[No. 15,145. Filed March 30, 1936. Rehearing denied July 2, 1936. Transfer denied October 1, 1936.]

538

 

*Thad M. Talcott, Jr., Walter R. Arnold* and *McKesson & Kizer,* for appellant.

*Orville W. Nicholas* and *Alvin F. Marsh,* for appellee.

BRIDWELL, J.—Appellant brought this action against appellee to recover judgment on five promissory notes, executed by appellee to Melrose Properties, Inc., said notes having been assigned and transferred from said Melrose Properties, Inc., to appellant. The complaint is in one paragraph; and appellee filed answer thereto in five paragraphs; the first a general denial; the second a plea of payment; the third alleging that plaintiff (appellant) is not the owner and holder of the notes in suit, and not the proper party to bring this action; the fourth that there was no consideration given for the notes in suit, and that the plaintiff took said notes with full knowledge thereof, and after maturity. The fifth paragraph alleges in substance that the consideration for the execution and delivery of the notes in suit has failed by reason of the fact that such notes were executed by appellee in connection with the purchase by him of certain described real estate located in Dade county, Florida, under an executory contract made between appellee and appellant's assignor, Melrose Properties, Inc., whereby appellee agreed to pay $3,600.00 for said real estate, the deed to same to be delivered when one-fourth of the purchase price was paid; that said contract was dated August 28, 1925, and on said day appellee paid to appellant's assignor the sum of $360.00, and, thereafter, on September 28, 1925, paid the further sum of $540.00, constituting one-fourth payment of the purchase price, and that appellee did execute the notes sued upon, together with a mortgage

on the real estate purchased, securing said notes, and did deliver said money, notes, and mortgage to appellant's assignor; that said assignor wholly failed and refused to deliver to appellee any deed for said real estate, and did thereby breach the contract to convey; that after said breach occurred, and while appellant's assignor still failed, neglected and refused to deliver deed, to wit, on November 5, 1926, appellee notified appellant's assignor by letter that it had broken the contract to convey, and that appellee would not be bound by said contract, and demanded the return of the notes sued upon; that whatever value the real estate had at the time deed was to be delivered, from that time on the value thereof rapidly depreciated, until said real estate became and was worth much less than the cash payments made by appellee thereon, and became and was worthless and unsalable, all while appellant's assignor did neglect, fail, and refuse to deliver to appellee a deed therefor; that long after said breach, and long after appellee had given notice he would not be bound by said contract, appellant's assignor did notify appellee that on or about March 26, 1927, it had executed a deed to appellee for said real estate, and had the same recorded; that if this be a fact, appellee stands ready and willing to reconvey the same to appellant's assignor or to appellant. A reply in general denial to each of the affirmative paragraphs of answer closed the issues. The cause was submitted to a jury for trial, and the jury returned a verdict for appellee. Appellant, in due course, filed its motion for a new trial, asserting as causes therefor that the verdict of the jury is not sustained by sufficient evidence; the verdict of the jury is contrary to law; error in refusing to give, and in the giving of certain specified instructions. This motion was overruled and appellant excepted. Judgment was rendered on the verdict, and appellant perfected this ap-

peal, assigning as error the overruling of its motion for a new trial.

At the close of all the evidence appellant filed its written request that the jury be instructed in writing only, and tendered its instruction numbered 1, requesting a directed verdict in its favor. The court refused to give this instruction, and appellant excepted. This ruling is assigned as one of the reasons for a new trial. It is asserted by appellant that the undisputed evidence shows a right of recovery on its part, and that, therefore, the verdict of the jury is not sustained by sufficient evidence; is contrary to law; and that the court erred in refusing to give its tendered instruction numbered 1, for a directed verdict in its favor.

Appellee contends that the judgment should be affirmed as the evidence conclusively shows that appellant's assignor, Melrose Properties, Inc., failed to deliver a deed to him when he paid one-fourth of the purchase price of the lot; that such failure breached the contract; that the property purchased depreciated materially in value while appellant's assignor was in default, becoming during such time worth less than the amount he had already paid; that collection of the notes sued upon cannot be enforced under such circumstances, but the loss occasioned by the depreciation in value must fall upon the party at fault.

Many of the material facts necessary to be considered in determining the legal rights of the parties as presented by this appeal are proven by evidence that is not contradicted. Among such facts are the following: In August, 1925, appellee purchased from Melrose Properties, Inc., lot number 19, block number 56, in Melrose Heights Subdivision, Dade County, Florida, for $3,-600.00, making a down payment thereon of $360.00, and receiving the following written instrument from the seller, to wit:

"RECEIPT

"Price of lot $3600.00 Aug. 28th, 1925.

"RECEIVED from John W. Horner, the sum of $360.00, payment upon Lot No. 19, Block No. 56, Subdivision MELROSE HEIGHTS, 4th Section in the N. E. ¼ of Section 28-53-51, Dade County, Florida. Balance $3240.00. Semi-ann. Payment $450.00.

Melrose Properties, Inc.
By Carolina Fritz, Salesman.

"CONDITIONS: On payment ¼ a warranty deed will be given to the purchaser. All streets and sidewalks are made at the expense of Melrose Properties, Inc., owners and developers of the above described property. The land above described will be sold subject to the usual Restrictions upon land in said Subdivision."

On September 28, 1925, appellee made an additional payment amounting to $540.00, which, together with the down payment, constituted one-fourth of the agreed purchase price of said lot. On December 17, 1925, appellee received through the United States mail, from E. D. Noe & Son, Inc., the exclusive selling agency for Melrose Properties, Inc., a letter inclosing a series of six notes, numbered respectively 1, 2, 3, 4, 5, and 6, and a mortgage covering the real estate in question to secure the payment of said notes, each note being in the principal sum of $450.00, payable to Melrose Properties, Inc., and all of said written instruments bearing date of September 28, 1925, which notes and mortgage the letter requested appellee to execute and return. Appellee complied with this request; executed the notes and mortgage, and mailed same to the said agents of Melrose Properties, Inc. The notes matured, according to their respective numbers in 6, 12, 18, 24, 30, and 36 months after date. On March 26, 1925, the first note was paid by appellee, together with the accrued interest on the other notes of the series, and no other payment upon any of said notes has since been made. The mort-

gage which was acknowledged by appellee on December 21, 1925, and recorded by Melrose Properties, Inc., on January 5, 1926, contained the following covenant:

> "And the said mortgagor for himself and his heirs, legal representatives, and assigns, does covenant with said mortgagee, its successors, legal representatives and assigns, that the said mortgagor is indefeasibly seized of said land in fee simple; that the said mortgagor has full power and lawful right to convey said land in fee simple. . . ."

On March 29, 1927, Melrose Properties, Inc., informed appellee by letter that it had been advised that he had not received a deed to the lot purchased; that this was quite a surprise as they had been under the impression that the town office had mailed to him his deed sometime in September, 1925; that they had placed a deed to said lot on record for him, and were sending with the letter a receipt from the office of the clerk of the Circuit court; that the recording fee amounted to $1.65, for which he would please reimburse them. The letter also submitted a proposition for a complete settlement of the transaction, but no response thereto was made by the appellee. There is also evidence to prove that on November 5, 1926, appellee wrote, and by United States mail dispatched to Melrose Properties, Inc., a letter which, omitting address, date, salutation, and signature, is as follows:

> "In reply to your letter of Oct. 26 in regard to note due Sept. 28, 1926, your failure to perform your part of the contract when ¼ of the purchase price was made, will say that I have paid all that I expect to pay. You have rec'd $1458 of my money, and you still have the deed to the lot, and I have nothing to show for the money paid you. I am asking you to please return the notes in question as I will pay no more of them, and the money paid you we will see about that later."

Evidence introduced by appellant is to the effect that no such letter was ever received by appellant's assignor.

The evidence also discloses that no deed for the lot in question had, up to the time of the trial of the cause, been delivered to appellee personally; that he was a resident of Knox, Indiana, and had never been in the state of Florida; that the lot purchased by him was selected for him by a former resident of Knox, and that, thereafter, all transactions in connection with the purchase and sale of this lot, and the payments made thereon, were conducted through correspondence transmitted by mail. It is proven, however, that a deed from Melrose Properties, Inc., to appellee, for the lot purchased by him, was duly recorded in the office of the clerk of the Circuit court of Dade county, Florida, the place where, under the laws of said state, real estate deeds are to be placed of public record.

At the time of the trial it was stipulated that the value of said lot number 19, on January 1, 1926, was $3,250.00; on November 1, 1926, $1,250.00; and on May 18, 1933, $200.00. It is also proven that the notes sued upon were transferred to the appellant by the original payee after the last of said notes matured, and that the mortgage securing said notes was assigned to appellant on the 15th day of August, 1930.

There is no evidence to prove that appellee at any time demanded of appellant's assignor that it execute and deliver to him a deed for said lot, or that said assignor ever, at any time, refused to do so. Neither is there any evidence in the record which tends to prove that the parties to the original transaction regarded the time for the delivery of the deed as an essential element of the contract, the non-performance of which would relieve appellee without any action on his part from any further obligations growing out of the contract. Conceding that the deed was not delivered to appellee on September 28, 1925, when he paid $540.00, making his total payments an amount equal to one-fourth of the

purchase price of the lot, it appears that he, thereafter, executed the notes evidencing the balance due on the purchase price, and gave a mortgage on the lot to his vendor to secure the payments of said notes, and that when the first note fell due he paid the same without any protest or complaint on his part concerning any failure on the part of his vendor to deliver a deed, although the value of the lot when this payment was made had already depreciated. When the next note fell due, further depreciation in value had occurred, and appellee, according to his own testimony, had decided he would make no further payments. In response to a letter notifying him that note number 2 was due, he advised his vendor he had paid all that he expected to pay, requested the return of his unpaid notes, and, thereafter, ignored all communications received which related to the subject matter out of which this controversy arose.

The principal question for determination is whether or not appellee is entitled to consider the contract breached, and to be relieved from liability on his unpaid notes, because of the failure of appellant's assignor to deliver deed to him at the time of the payment of one-fourth of the purchase price of said lot, or reasonably soon thereafter, and, because of depreciation in value of the property purchased prior to any delivery, when it is shown that there was no refusal to convey by the vendor, and no notice to convey, or demand for conveyance, on the part of appellee at any time.

In the case of *Boldt* v. *Early* (1904), 33 Ind. App. 434, 70 N. E. 271, this court quotes with approval Pomeroy, Contracts (2nd Ed.) §395, as follows:

"As the doctrine that time is not essential in the performance of a contract may sometimes work injustice, and be used as the excuse for unwarrantable laches, the following rule was introduced at a comparatively late period, and is now firmly settled, which prevents the doctrine from being abused

by the neglect or willfulness of either party. If either the vendor or the vendee has improperly and unreasonably delayed in complying with the terms of the agreement on his side, the other party may, by notice, fix upon and assign a reasonable time for completing the contract, and may call upon the defaulting party to do the acts to be done by him, or any particular act within this period. The time thus allotted then becomes essential, and if the party in default fails to perform before it has elapsed, the court will not aid him in enforcing the contract, but will leave him to his legal remedy."

See also *Sheets* v. *Anderson* (1829), 2 Blackford (Ind.) 274; *Mather* v. *Scoles* (1870), 35 Ind. 1; *Sapinsky* v. *Jefferson County Construction Co.* (1923), 79 Ind. App. 557, 131 N. E. 846.

In *McNamara* v. *Pengilly* (1894), 58 Minn. 353, 357, 59 N. W. 1055, the court said:

"Where there is no stipulation that time shall be essential, nor anything in the nature or circumstances of the agreement to make it so, it may nevertheless be made of the essence by the proper action of the party who is not in default. Notice to a vendor to perform or to a vendee to pay can be given, and, if not complied with within a reasonable time, the contract may be treated by the vendor as abandoned, or by the vendee as rescinded. But it is not within the power of a party to a contract of this kind, who has acquiesced in or consented to delay in the performance, to deprive the other of all opportunity to perform without notice. A vendor of land cannot be permitted to tacitly consent to postponement of payments by the vendee, and then, without a word of warning, deprive the latter of his opportunity to pay. Nor can a vendee be allowed to acquiesce in and encourage delay in the delivery of a deed by the vendor, and then to summarily take away all opportunity to deliver it. Such is not the rule, even where time is specifically made, or may become, of the essence of the contract. If it were, the rankest cupidity and bad faith would be promoted between vendors and vendees. . . . . . . . . . . . Of course, the neglect of either party to perform the

conditions of the agreement at or within the time or times stipulated, or, when no time is specified, within a reasonable time, may in some instances amount to, or at least be evidence of, an intention to repudiate or abandon. It is not, however, a mere slight or partial neglect or omission of one of the contracting parties to perform as he has obligated himself which will justify the other in repudiating the contract or suing for a rescission. As a rule, the failure must be a total one; there must be an absolute refusal, or evidence of inability, unless time has been made an essential element, so that the object of the contract shall have been defeated or rendered unattainable by reason of the misconduct or default."

In view of all facts established by uncontradicted evidence, we conclude that the verdict of the jury is not sustained by sufficient evidence; is contrary to law; and that the court erred in refusing to give appellant's requested instruction numbered 1, for a directed verdict in its favor.

Judgment reversed with instructions to sustain appellant's motion for a new trial, and that further proceedings be consistent with this opinion.