## HORNER *v.* ALLAH FARMS, INC.

[No. 16,081. Filed December 20, 1938. Rehearing denied May 23, 1939. Transfer denied October 3, 1939.]

*Orville W. Nichols,* and *George F. Stevens,* for appellant.

*Walter R. Arnold,* and *Thad M. Talcott, Jr.,* for appellee.

CURTIS, C. J.—This action in the trial court was commenced by the appellee against the appellant upon certain purchase money promissory notes given by the appellant to Melrose Properties, Inc., a Florida corporation, in connection with the purchase by the appellant from it of a piece of Florida real estate, it being alleged in the complaint that the appellee is the assignee and owner of said notes. The purchase price of said real estate was $3,600.00 and the principal amount of the notes sued upon is $2,250.00.

The complaint was in one paragraph to which the appellant filed answers in general denial; payment; that the plaintiff (appellee) was not the owner of said notes; and no consideration. An amended answer of failure of consideration was also filed as well as additional paragraphs of answer setting up alleged inequity and hardship upon the appellant and unjust enrichment of the appellee together with rescission and fraud. Two more affirmative paragraphs were also filed by the appellant based respectively upon damages for the alleged breach of the contract to convey the said real estate and for cancellation of said notes. The appellee replied in two paragraphs, to the second of which the appellant filed a general denial closing the issues.

Upon the issues thus made the matter was submitted to the court for trial without the intervention of a jury. Upon proper request the court made a special finding of facts and stated its conclusions of law thereon, pursuant to which judgment was rendered in favor of the appellee against the appellant upon the complaint and against the appellant also upon each paragraph of answer or counterclaim.

The appellant seasonably filed a motion for a new trial which was overruled but no question is brought before us as to that ruling. The errors assigned in this court and relied upon for reversal are alleged errors as to each of the court's five conclusions of law.

By the failure of the appellant to challenge, in this court, the finding of facts, we will assume that the facts found by the court were correctly found by the court under the evidence and within the issues.

In the appellant's brief he expressly admits that "there are no disputed facts."

The five conclusions of law stated by the trial court and challenged in this court are as follows:

"1. The law is with the plaintiff that it is entitled to recover of the defendant the principal and interest on said notes sued upon, and $700.00 attorney's fees.

"2. The fact that the defendant did not receive the deed of conveyance made in 1925 does not afford the defendant any defense to the notes sued upon.

"3. The fact that the value of real estate, particularly the value of the lot purchased by the defendant from Melrose Properties, Inc., rapidly declined between the time defendant was entitled to receive the deed and the time that the deed was forwarded to him in March, 1927, does not constitute any basis for defense by the defendant to the notes sued upon nor any cause of action for damages on his several paragraphs of counter-claims.

"4. The defendant is not entitled to recover upon

any paragraph of his counter-claim and plaintiff is entitled to have its costs.

"5. The plaintiff is entitled to recover upon the several notes sued herein, $2,250.00 principal, $1,-972.55 interest and $700.00 attorney's fee, a total of $4.922.55, which judgment should bear interest at the rate of eight per cent per annum, from March 16, 1937, until paid and plaintiff is entitled to recover its costs herein laid out and expended, taxed at $....................."

The appellant in his brief, in respect to conclusions of law numbered 1, 2, and 3 says: "These three conclusions are so inter-related that we consider them together, conclusions 2 and 3 being explanatory of conclusion No. 1." We, therefore, will consider said three conclusions together.

The special finding of facts is as follows:

"Melrose Properties, Inc., from 1925 to 1930 was engaged in the sale of real estate at Miami, Dade County, in the State of Florida, selling individual lots for a large subdivision owned by it. Defendant, at all of said times, was a resident of the city of Knox, Starke County, Indiana, and had never personally inspected any of the land of said Melrose Properties, Inc., but had acquired knowledge concerning the same through two of his friends who had purchased lots from said Melrose Properties, Inc., one Guy Wells and one Mrs. Methel Kreuter, wife of the defendant's partner, and who was sales agent for Melrose Properties and its general sales agent, E. D. Noe & Son, Inc., on a commission basis.

2.

"From 1925 and shortly prior thereto, up to the spring of 1926, highly inflatory values had occurred in the real estate field, especially in and about Miami in the State of Florida, and said property of Melrose Properties, Inc., is located at the northwest outskirts of Miami, and in the year 1925 the limits of said city of Miami were extended to embrace the said real estate holdings of Melrose Properties, which as late as 1924, was farm land, much of it in pasture. The wild speculative boom in Florida in 1924 to 1926 prompted its subdivision into lots and

a program to build on part of it a large hotel to cost from one to two million dollars. These facts were communicated to the defendant by Mr. Wells and Methel·Kreuter and he was urged by them to invest in lots so subdivided by said Melrose Properties, Inc., and from such reports believed he could make money by purchasing such lots. Being so induced to act, he did, on the 28th day of August, 1925, agree to purchase a vacant lot No. 19 in Block 56 of Melrose Heights for $3,600.00, of which he agreed to and did then pay ten per cent to wit: $360.00 in cash and the balance of $3,240.00 payable in semi-annual payments of $450.00 each, it being agreed in writing by Melrose Properties, Inc., that when one-quarter of the purchase price was paid there should be given to the defendant a warranty deed for the property. Construction of said large hotel was started but was never completed.

### 3.

"On September 28, 1925, Melrose Properties, Inc., having been paid a total of one-quarter of the purchase price by the defendant, mailed to him six promissory notes, each in the sum of $450.00 and a mortgage to secure the same on the real estate purchased, for his execution, the promissory notes representing the balance of the purchase price. Transmittal of these notes and mortgage was accompanied by a letter by E. D. Noe & Sons, Inc., to the effect that as soon as notes and mortgage were executed and returned a warranty deed, which was then ready for delivery, would be mailed to the defendant. Defendant followed the instructions contained in the letter, executed the notes and mortgage upon said lots, and forwarded the same to said selling agents. When the notes and mortgage were received by Melrose Properties, Inc., the selling agents recorded the mortgage, and procured from the owner a warranty deed to the defendant for the lot. Through some oversight or mishap the said selling agents failed to deliver the deed to the defendant and the defendant received no other acknowledgement from Melrose Properties, Inc., of the receipt of the notes and mortgage by the selling agent and heard nothing further of the matter until March, 1926, when he was notified by a bank at Miami that the first of six notes

had been presented for payment. Pursuant to said notice defendant, on March 26, 1926, forwarded his check to said bank to cover the payment of principal and interest of said note, and the interest on the other five notes accrued up to that time, in the aggregate amount of $558.00.

### 4.

"On September 28, 1926, the second note of the series became due and Melrose Properties, Inc., notified the defendant of that fact but defendant did nothing in reference thereto until November 5, 1926, when, by letter, dispatched to Melrose Properties, Inc., he advised the seller that he would pay no more on the property because he had received no deed and asked that his notes be returned. Melrose Properties, Inc., did not receive this communication and the defendant, at no time, prior to dispatching said communication, made any demand upon Melrose Properties, Inc., or the selling agent for a deed to the property.

### 5.

"In December, 1926, Methel Kreuter visited Knox, Indiana, and talked with the defendant concerning the property and the transaction and was advised by the defendant that he had not received a deed. Methel Kreuter returned to Florida a few weeks thereafter and in March, 1927, communicated to Melrose Properties, Inc., the fact that defendant had not received a deed to his property. A duplicate deed was immediately executed, placed on record in Florida, and by the recording officer forwarded by mail to the defendant. The defendant refused to accept the parcel containing the deed when it was sought to be delivered by the mail man and it was returned to the recording officer in Florida. Interim the purchase by the defendant of the real estate aforesaid on August 25, 1925, commencing about May, 1926, and until the forwarding of the deed in March, 1927, real estate values in Florida suffered tremendous depreciation and one of the principal causes of the deflation in values was a hurricane of tremendous proportions which visited that state and the district surrounding Miami on September 18, 1926. Typical of the deflationary process is the rapid decline in the value

of the lot in question, to wit: at the time the defendant purchased the lot it was worth approximately $3,600.00 the price agreed upon. On January 1, 1926, it was of the value of $3,250.00; on November 1, 1926, $1,250.00; March, 1927, $750.00 and as of May 18, 1933, $200.00.

### 6.

"In August, 1930, the plaintiff herein acquired from Melrose Properties, Inc., among other properties—tangible and intangible—the remaining five notes which had been executed by the defendant and which are copied verbatim as exhibits in the complaint herein, and to which reference is made with like effect as if herein set out at large. Two hundred thousand dollars or three hundred thousand dollars were involved in the transaction and the notes of the defendant were listed in the transaction and taken at the value of $100.00 by the plaintiff, and plaintiff has owned the said notes ever since, plaintiff being a corporation organized and existing under the laws of the State of Florida with its principal office and place of business at Miami, said state.

### 7.

"Between March, 1927, and the time plaintiff's predecessor executed the duplicated deed and placed the same on record and the time plaintiff acquired title to the notes and on to wit: October 25, 1926; March, 1927; April 25, 1927; May 27, 1927; August 29, 1927; August 31, 1927; October 14, 1927; November 9, 1927; December 1, 1927; February 27, 1928; February 28, 1928; March 23, 1928, July 24, 1928; May 15, 1928; January 29, 1930, demands for settlement were made by Melrose Properties upon the defendant for payment of the several notes, all said demands being in writing, dispatched by mail and received by defendant, but defendant made no response whatever thereto. Before the institution of this action demand was made by one of the attorneys for the plaintiff advising that plaintiff held the notes and demanded payment to said attorney. Defendant ignored said demand and this suit was instituted.

### 8.

"Sometime between April 1, 1926, and October,

1926, the defendant had concluded and determined not to accept any deed to the said property after October, 1926, if the same were tendered to him because of the rapid decline in the value of the lot as shown above. The defendant would have been given a deed by Melrose Properties, Inc., had he notified Melrose Properties, Inc., that he had never received a deed.

### 9.

"If entitled to recover herein at all the plaintiff is entitled to recover attorney's fees for services performed by its counsel in this cause the sum of seven hundred dollars being the reasonable value of such service.

### 10.

"The promissory notes sued upon were each severally endorsed by Melrose Properties, Inc., the payee, to the plaintiff, and there has accumulated in the aggregate, interest on said notes to this date, the sum of $1,972.55, which, with the aggregate principal on said several five notes of $2,250.00 makes a total of $4,222.55 principal and interest to this date.

### 11.

"Neither Melrose Properties, Inc., nor the plaintiff at any time refused to deliver a deed to the premises to the defendant as called for by the purchase agreement.

### 12.

"That at the time the defendant executed and delivered to plaintiff's assignor the notes and mortgage and at the time he paid the first mortgage note, the defendant believed that the real estate was worth as much or more than the purchase price therefor. That defendant never knew until the trial of this cause that Methel Kreuter was the selling agent for plaintiff's assignor and plaintiff's assignor never informed defendant that it delivered a deed for said lot to its selling agent as hereinbefore found, nor did defendant learn of that fact until the trial of this cause. That defendant never did any act to delay delivery of the deed."

This is a second appeal in this matter. The former

appeal was from a judgment on a verdict of a jury which verdict was in favor of the appellant herein. In that appeal this court reversed said judgment. See *Allah Farms, Inc.* v. *Horner* (1936), 102 Ind. App. 537, 543, 544, 200 N. E. 740. A petition for transfer was denied October 1, 1936.

In said former appeal this court, among other things said:

"There is no evidence to prove that appellee at any time demanded of appellant's assignor that it execute and deliver to him a deed for said lot, or that said assignor ever, at any time, refused to do so. Neither is there any evidence in the record which tends to prove that the parties to the original transaction regarded the time for the delivery of the deed as an essential element of the contract, the nonperformance of which would relieve appellee without any action on his part from any further obligations growing out of the contract. Conceding that the deed was not delivered to appellee on September 28, 1925, when he paid $540.00, making his total payments an amount equal to one-fourth of the purchase price of the lot, it appears that he, thereafter, executed the notes evidencing the balance due on the purchase price, and gave a mortgage on the lot to his vendor to secure the payments of said notes, and that when the first note fell due he paid the same without any protest or complaint on his part concerning any failure on the part of his vendor to deliver a deed, although the value of the lot when this payment was made had already depreciated. When the next note fell due, further depreciation in value had occurred, and appellee, according to his own testimony, had decided he would make no further payments. In response to a letter notifying him that note number 2 was due, he advised his vendor he had paid all that he expected to pay, requested the return of his unpaid notes, and, thereafter, ignored all communications received which related to the subject matter out of which this controversy arose.

"The principal question for determination is whether or not appellee is entitled to consider the contract breached, and to be relieved from liability

on his unpaid notes, because of the failure of appellant's assignor to deliver deed to him at the time of the payment of one-fourth of the purchase price of said lot, or reasonably soon thereafter, and, because of depreciation in value of the property purchased prior to any delivery, when it is shown that there was no refusal to convey by the vendor, and no notice to convey, or demand for conveyance, on the part of appellee at any time."

The court, then, after reviewing several of the cases in point said further, "In view of all facts established by uncontradicted evidence, we conclude that the verdict of the jury is not sustained by sufficient evidence; is contrary to law; and that the court erred in refusing to give appellant's requested instructions numbered 1, for a directed verdict in its favor." The judgment denying liability on the notes was accordingly reversed.

It is true that in the retrial of the cause after the said reversal of the first judgment there were some amendments and additions to the pleadings but the factual situation found in the special finding of facts in the instant case was as favorable or even more favorable to the appellee than was the situation in the former appeal. Upon the facts as found we believe that the conclusions of law are correct.

Judgment affirmed.