### SHELT ET AL. v. BAKER ET AL.

[No. 11,292. Filed November 17, 1922. Rehearing denied February 14, 1923. Transfer denied May 10, 1923.]

1. QUIETING TITLE.—Contracts.—Sale of Realty.—Forfeiture.—Defenses.—Payment of Liens by Vendee.—In an action to quiet title as against a forfeited contract for the purchase of land, a cross-complaint alleging payment of claims for liens against the property held insufficient as against demurrer, where it failed to allege that the claims were valid, and constituted liens against the land; the burden of making such allegation and proof being on defendants. p. 613.

2. APPEAL.— Review.— Award of Damages.— Presumptions.— Forfeiture of Contract for Purchase of Land.—In an action to quiet title as against a forfeited contract for the purchase of land and for damages for unlawful detention, the court on appeal, in determining whether the award of damages to plaintiff is excessive, will assume that the evidence was sufficient to sustain the trial court in finding that defendants were in default in paying the installments due under the contract,

thereby forfeiting their rights thereunder, and that plaintiffs were entitled to recover damages in some amount. p. 613.

3. VENDOR AND PURCHASER.—*Contract for Sale of Realty.—Forfeiture.—Unlawful Detention.—Measure of Damages.*—Where a contract for the sale of realty is forfeited by the default of the purchaser, the purchaser's possession thereafter is a wrongful and unlawful detention, and the measure of damages therefor is the rental value of the property during the time of such unlawful detention. p. 613.

VENDOR AND PURCHASER.—*Contract for Sale of Realty.—Default in Payments.— Forfeiture.— Acceptance of Less than Amount Due.—"Waiver."*—Where the purchasers of land under an installment contract defaulted in a number of their monthly payments, and they were notified by the sellers that unless all installments past due and unpaid were paid on or before a named date, together with the payment due on that date, the sellers would exercise their option to declare the contract forfeited, the acceptance on such date of a sum equal to the amount of a monthly installment did not amount to a waiver or estoppel of the right of the sellers to declare the contract forfeited, since they did not have such right at the time such amount was accepted; a waiver being a voluntary yielding up of some existing right, an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it. p. 615.

5. QUIETING TITLE.—*Contract for Sale of Land.—Forfeiture.—Waiver.—Burden of Proof.*—In an action to quiet title, where a waiver of the right of forfeiture under a contract for the sale of land was set up as a defense, the burden of proving the waiver was upon defendants. p. 615.

6. QUIETING TITLE.—*Contract for Sale of Land.—Default.—Forfeiture.—Answer.—Sufficiency as Equitable Tender.*—In an action to quiet title to land as against contract for the sale of land which was forfeited for default in payments, allegations in the answer that defendants stood ready and willing to pay any amount that the court might find was due on the contract, *held* insufficient as an equitable tender. p. 616.

7. FORFEITURES.— *Equitable Relief.— Forfeiture Occasioned by Willful Neglect of Party Seeking it.*—While courts of equity will, in cases properly requiring it, relieve a party against forfeiture, such relief will not be afforded in cases where the default and forfeiture have been occasioned by the willful neglect of the party seeking it; nor will equity grant relief to a party from the effect of his default when nothing is done by the other party to render it unconscionable for him to avail himself of the default. p. 618.

Shelt *v.* Baker—79 Ind. App. 606.

8. QUIETING TITLE.—*Contract for Sale of Land.—Forfeiture.—
Equitable Relief.—Default Occasioned by Willful Neglect.*—In
an action to quiet title as against a forfeited contract for the
purchase of land in which defendants sought relief against the
forfeiture, equitable relief could not be granted, where the for-
feiture was incurred through the willful neglect of the de-
fendants to make payments when due.   p. 621.

9. NEW TRIAL.—*Grounds.—Finding that Plaintiff Take Nothing.
—Specification that Amount of Recovery is too Small.—Ap-
plicability.*—The specification in a motion for new trial that
the court erred in the assessment of the amount of recovery,
in that it is too small, is not applicable where there was a
general finding and decree that the complaining party take
nothing, as in such case the ground stated in the motion should
be that the verdict or decision is not supported by sufficient
evidence or that it is contrary to law.   p. 622.

From Elkhart Superior Court; *William B. Hile,*
Judge.

Action by Burton E. Baker and another against Wil-
lard B. Shelt and another.   From a judgment for plain-
tiffs, the defendants appeal.   *Affirmed.*

*C. C. Raymer, C. T. Old, C. A. Lee* and *M. B. Hottel,*
for appellants.

*Verne G. Cawley,* for appellees.

MCMAHAN, J.—On June 10, 1918, appellants as par-
ties of the second part, and appellees as parties of the
first part, entered into a written contract whereby ap-
pellees agreed to convey certain real estate to appellants
upon the latter paying appellees the sum of $5,200 as
follows:   $1,165 cash, and the sum of $30 on or before
July 10, 1918, and a like amount on or before the tenth
of each month thereafter during five years, all the bal-
ance to be paid on or before June 10, 1923, with interest
on all unpaid installments at the rate of seven per cent.
per annum computed monthly and deducted from the
monthly installments paid during such period; appel-
lants to pay all taxes and assessments on the real estate
subsequent to 1917, as they became due and all pre-

miums for $3,000 insurance on buildings. Following the above agreement said contract continued as follows:

"There is now existing against said described real estate mortgage indebtedness in favor of the St. Joseph Valley Bank of Elkhart, Indiana, in the sum of $3,500, which leaves a balance due under this contract of first parties equity of $535 and it is hereby agreed by and between the parties hereto, that when said second parties have paid said equity of $535, together with interest, taxes, and insurance as above provided, then the said first parties will execute to the said second parties, their successors and assigns, a good and sufficient warranty deed, subject to said mortgage indebtedness of $3,500; it being expressly understood and agreed that the payments herein provided to be made by said second parties shall be first applied on the equity of $535 of said first parties in and to, said real estate. The said first parties reserve the right to declare this option forfeited, to re-enter and take possession of said premises and to retain all moneys paid hereon, at any time the said parties of the second part shall fail to perform any of the said conditions at the time or times provided. * * * that in case they (appellants) fail to pay any of the installments, interest, taxes, assessments or premiums for insurance above mentioned at the time or times above provided, then all moneys theretofore paid shall be retained by said parties of the first part as rent for the use of said premises and they will then relinquish to the said parties of the first part, their successors and assigns, possession of said real estate, * * *."

Appellees on October 13, 1920, filed complaint against appellants to quiet title to the real estate described in said contract. On March 3, 1921, an additional and second paragraph of complaint was filed alleging that

appellants at the time of the execution of said contract took possession of the real estate, but had failed and neglected to pay the installment of $30 due April 10, 1920, and all subsequent installments as provided in said contract; that on or about July 1, 1920, appellees notified appellants that unless all installments then past due and unpaid under the contract were paid on or before September 10, 1920, together with the installment due September 10, appellees would exercise their option under the contract to declare the same forfeited and canceled; that appellants were further notified at said time that unless they paid the installments as they became due under the contract on the tenth of each and every succeeding month, a failure so to do would cause appellees to exercise their right to forfeit the contract and take possession of the property; that appellants did not pay the installments due in compliance with said demand; that they had not paid any of said installments since the installment due April 10, 1920, and had retained possession of said real estate to appellees' damage; and asked judgment, declaring said contract forfeited, for possession of the real estate, and for damages for unlawful detention.

Appellants filed an answer to the second paragraph of the complaint. The first paragraph of this answer being a general denial, the second a plea of payment, the third alleged that subsequent to the time appellees notified appellants that unless all installments past due and unpaid were paid on or before September 10, 1920, together with the installment due on that date, appellees would exercise their option to declare the contract forfeited, and that unless appellants paid the installments which became due on the tenth of each succeeding month appellees would forfeit said contract, appellees agreed with appellants that if appellants would pay the monthly installments of interest, that for awhile payments

would not be demanded on the principal; that by reason of said last referred to agreement appellees waived said demand and notice and that appellants stood ready and willing to pay any amount the court might find due appellees on said contract.

By the fourth paragraph appellants admitted the execution of the contract and alleged they had paid the initial payment of $1,165; that subsequently they made monthly payments aggregating $720.12; that they entered into possession of the real estate and have continued in possession, making improvements and paying taxes thereon; that since the contract was made the real estate has increased in value at least $2,500; that the contract provided for interest on the deferred payments at the rate of seven per cent. per annum; that rental value of the real estate during the time appellants occupied it was $28 per month; that the contract required appellants to pay interest and taxes and to keep the house insured, and was executed by the parties for the purpose of furnishing security to appellees for the unpaid purchase price and constituted an equitable mortgage; that they stood ready and willing to pay any amount the court might find due appellees at the time of the trial, and demanded that if the court should find them to be in default and that appellees were entitled to possession of the real estate, that the court, as a matter of equity, require appellants to pay appellees such sum as is just and said contract be foreclosed as a real estate mortgage is foreclosed. Appellants also filed a cross-complaint against appellees asking that their title to the real estate be quieted as to all claims of appellees. Subsequently a second paragraph of cross-complaint was filed whereby appellants sought to recover damages from appellees by reason of misrepresentation as to the size of the lot. A third paragraph of cross-complaint alleged that at the time the contract

was entered into a new house was on the real estate; that, after taking possession of the same appellants found there was a valid and unpaid account in the sum of $75 for material owing a lumber dealer, which material was furnished and used in the construction of said house; that there was an unpaid bill for tin work which appellants were compelled to pay to protect said property and prevent liens being filed therefor; that when said contract was entered into there was a thermostat of the value of $35 attached to the heating plant which had not been paid for, and that appellants being unable to pay for same, said thermostat was removed and they asked damages of $110. A demurrer to the third paragraph of the cross-complaint was sustained.

Appellees filed answer to the first and second paragraphs of the cross-complaint and a reply to the second, third, and fourth paragraphs of the answer. The cause was submitted to the court for trial without any answer having been filed to the first paragraph of the complaint.

The cause was tried by the court and resulted in a finding and judgment for appellees in the sum of $400 as damages, that they have possession of the real estate, that the contract be canceled, and that appellants take nothing on their cross-complaint. Appellants filed their motion for a new trial on the grounds: (1) that the court erred in assessing the amount of recovery by plaintiff, the same being too large; (2) that there was error in the assessment of the amount of recovery by appellants on their second paragraph of cross-complaint, the same being too small; (3) that the decision of the court was not sustained by sufficient evidence; and (4) that the decision of the court was contrary to law.

This motion having been overruled, appellants appeal and assign as error the action of the court in sustaining appellees' demurrer to the third paragraph of the

cross-complaint and in overruling their motion for a new trial.

Appellants contend they had the right to protect their interest in the property against valid liens by paying claims, and say if the liens were not valid that 1. fact could have been developed on trial as a matter of defense. In other words, their contention is that it was not necessary for them to allege in the third paragraph of cross-complaint nor for them to prove that the alleged claims were valid and constituted liens against the property, but that the burden of proving such claims and liens were not valid was on appellees. This contention is untenable. There was no error in sustaining the demurrer to this paragraph of cross-complaint.

In support of their contention that the court erred in overruling the motion for a new trial, appellants insist: first, that the amount of recovery in favor of appellees was too large. In considering this contention we must assume that the evidence was sufficient to sustain the court in finding appellants were in default in paying the installments due, that they had thereby forfeited their rights under said contract, and that appellees were entitled to recover damages in some amount. So in determining whether or not the amount of recovery is too large, we proceed upon the theory that the contract was forfeited by reason of appellants' default. Under such a condition appellants' possession of the property after such default was a wrongful and unlawful detention and the measure of appellees' damages for such unlawful detention is the rental value of the property during the time of such unlawful detention. Appellees introduced two witnesses as to the rental value of the property during that period. One of them testified such rental value was $40 per month, while the other testified that it was $45 per month. Appel-

lants introduced one witness upon that subject, who testified that "the average rental value" from June 10, 1918, the date of the contract, to the time of the trial was $40 per month. This was the only evidence introduced upon the question of rental value.

Appellants' default dates from September 10, 1920. Judgment was rendered July 6, 1921. The court, in case it found for appellees, was therefore justified in rendering judgment against appellants for the rental value of the real estate from September 10, 1920, to July 6, 1921, a period of but three days less than ten months, and if appellees are entitled to any judgment, the evidence is sufficient to support the finding as to the amount of damages. The amount of recovery therefore was not excessive.

The fact that appellants had made the cash payment of $1,165 and had paid the subsequent installments up to and including the one due April 10, 1920, has no bearing upon the amount of recovery, as appellants had failed and neglected to carry out their part of the contract, and the contract was forfeited by reason of such failure. The amount paid by them under the plain terms of the contract was to be retained by appellees as rent for the property up to the time of forfeiture.

The next contention of appellants is that the decision of the court is not sustained by sufficient evidence. In support of this contention appellants first insist that appellees by accepting $30 September 10, 1920, waived their right to declare the contract forfeited by reason of appellants' failure to pay the whole of the amount due on that day; that appellees' acceptance of a less amount than the total amount due was a waiver of their right to declare the contract forfeited. Appellants cite no authorities in support of this proposition. On September 10, 1920, appellants were in default in paying the installments due in April, May, June, July, August, and

September of that year. They had also failed to pay taxes amounting to $49.46 and insurance premiums amounting to $23.33, a total of $72.79. The uncontradicted evidence shows that the installment of $30 due July 10, 1918, was paid five days after it was due, and that the installments for August, September, October, and November, 1918, were paid on or a few days prior to the time when due. The installment for December, 1918, was paid two days after it was due. The January, 1919, installment was paid thirteen days after it was due. Subsequent installments were all paid after they became due, as follows: February, 1919, 44 days; March, 65 days; April, 67 days; May, 104 days; June, 102 days; July, 118 days; August, 121 days; September, 137 days; October, 151 days; November, 153 days; December, 155 days; January, 1920, 158 days; February, March, and April, each 150 days. When this action was commenced the installments for May, June, July, August, September, and October, 1920, were due and unpaid. Appellants in this connection say that—"The breach in not bringing up payments by September 10, 1920, was not available until that time which was fixed by appellees had arrived." In making this statement appellants assume that appellees would have had the right to declare the contract forfeited September 4, 5. 10, 1920, when the $30 was paid, if they had not accepted the $30. This contention is not warranted. Appellees had no more right to declare the contract forfeited at the time of this payment than they had upon September 9 or any day prior thereto. Had appellants paid the $30 subsequent to September 10, and appellees accepted the same, a different question would be presented. Appellees had no right on September 10, 1920, to declare the contract forfeited. As the right to forfeit the contract was not in existence on that day, the acceptance of the $30 did not, as a matter of law,

amount to a waiver or estoppel on the part of appellees of the right to declare the contract forfeited in case the balance due was not paid that day. A waiver is ordinarily a question of fact. Very seldom is it a question of law. In the instant case it was a question of fact and the court found that issue in favor of appellees, and under the circumstances that finding is binding on appeal. And as before stated, the acceptance of the $30 by appellees September 10, did not, as a matter of law, amount to either a waiver or an estoppel. *Barry, etc., Lumber Co.* v. *Insurance Co.* (1904), 136 Mich. 42, 98 N. W. 761; *San Bernardino I. Co.* v. *Merrill* (1895), 108 Cal. 490, 41 Pac. 487. A waiver is a voluntary yielding up of some existing right, *Continental Ins. Co.* v. *Ruckman* (1889), 127 Ill. 364, 20 N. E. 77, 11 Am. St. 121, an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it. The burden of proving a waiver is upon the party claiming it. *Perin* v. *Parker* (1888), 126 Ill. 201, 18 N. E. 747, 2 L. R. A. 336, 9 Am. St. 571; *Rosen* v. *Insurance Co.* (1909), 106 Me. 229, 76 Atl. 688.

The next contention of appellants is that the finding of the court is not sustained by sufficient evidence because of the allegations in the third and fourth

6. paragraphs of answer, that they stood "ready and willing to pay any amount that the court" might find was due on the contract. It is to be observed that this contention is not based upon any evidence but upon the naked fact that their answer contained the statement just quoted without any evidence. Appellants assume that this allegation in their answer amounted to an equitable tender, and on such assumption argue that the finding is not sustained by sufficient evidence. *Bowen* v. *Gerhold* (1904), 32 Ind. App. 614, 70 N. E. 546, 102 Am. St. 257; *Nesbit* v. *Hanway*

(1882), 87 Ind. 400; and *Cooms* v. *Carr* (1876), 55 Ind. 303, cited by appellants do not support appellants' contention.

In a suit for specific performance the plaintiff must show that he has been ready, willing and eager to perform, and the burden is upon him to show a full and complete performance or offer to perform on his part. While time may not be of the essence of the contract originally, it may be made so by the conduct of the vendor or vendee subsequent to the making of the contract. And as said in *Boldt* v. *Early* (1904), 33 Ind. App. 434, 443, 444, 70 N. E. 271, 274 (104 Am. St. 255): "Neither can inability to pay the purchase money when due, not attributable to the fault of the vendor, be regarded by the court, as any excuse for failure to pay at maturity, or upon demand thereafter. * * * In Pomeroy, Contracts (2d ed.), §395, it is said: 'As the doctrine that time is not essential in the performance of a contract may sometimes work injustice, and be used as the excuse for unwarrantable laches, the following rule was introduced at a comparatively late period, and is now firmly settled, which prevents the doctrine from being abused by the neglect or willfulness of either party. If either the vendor or the vendee has improperly and unreasonably delayed in complying with the terms of the agreement on his side, the other party may, by notice, fix upon and assign a reasonable time for completing the contract, and may call upon the defaulting party to do the acts to be done by him, or any particular act within this period. The time thus allotted then becomes essential, and if the party in default fails to perform before it has elapsed, the court will not aid him in enforcing the contract, but will leave him to his legal remedy.'"

Appellants made no showing of any attempt to do equity. They had a contract for the purchase of the

real estate in question on the installment plan, paying $30 per month, while in their answer they admit the rental value from the date of the contract was $28 a month and the only witness they introduced upon this question testified the rental value was $40 a month from June, 1918, to the date of the trial in 1921.

The agreement of appellants was not a simple covenant for the payment of money, where the forfeiture was regarded merely as security for the unpaid installments. Here appellees had agreed to convey the property subject to a mortgage of $3,500, giving appellants the right to pay the balance after the initial payment was made in monthly installments, these monthly installments to cover and include the interest on the mortgage debt and the unpaid purchase price. Not only were appellants to pay the monthly installments as they became due, but they agreed to carry fire insurance and to pay the taxes. They failed to pay the monthly installments, they failed to take out and pay for the insurance, and they failed to pay the taxes. They were not prevented from making any of these payments by reason of accident, fraud, or surprise. Their failure to pay was intentional on their part. While courts of equity will, in cases properly requiring it, relieve a party against forfeiture, "this relief will not be afforded in cases where the default and forfeiture have been occasioned by the willful neglect of the party seeking it." *Noyes* v. *Anderson* (1890), 124 N. Y. 175, 26 N. E. 316, 21 Am. St. 657. Equity will not grant relief to a party from the effect of his default when nothing is done by the other party to render it unconscionable for him to avail himself of the default. Appellants not only failed to pay the monthly installments and to take out or pay for the insurance and to pay the taxes, but they refused to repay appellees the insurance premiums and taxes paid by the latter and which appellants were under ob-

ligations to pay.   As heretofore indicated we cannot agree with appellants in their contention that the contract was given as security for the payment of the unpaid purchase money.   Quoting from *Glock* v. *Howard & Wilson Colony Co.* (1898), 123 Cal. 1, 7, 55 Pac. 713, 715, 43 L. R. A. 199, 69 Am. St. 17: "* * * as was said by Lord Eldon in expressing his dissatisfaction with the relief against forfeitures granted by equity: 'The result of experience is, that where a man having contracted to sell his estate is placed in this situation that he cannot know whether he is to receive the price when it ought to be paid, the very circumstance that the condition is not performed at the time stipulated may prove his ruin, notwithstanding all the court can offer as compensation.' (*Hill* v. *Barclay*, 18 Ves. Jr. 59.)   It may frequently be of the utmost consequence to the vendor that he should have the right to enforce the contract and receive payment for his land in money, since he may much prefer the full purchase price to retaining the estate and receiving smaller monetary compensation by way of damages.   And, finally, it is to be considered that during the life of such contracts the vendor foregoes his right to convey to another.   He may thus lose an opportunity to make an advantageous sale, and, while this right is admittedly valuable it is extremely difficult to put a price upon it.   For these reasons, the equitable action for specific performance is as available to the vendor as to the vendee.   (Pomeroy on Specific Performance, Secs. 6-12.)   * * * One other point invites brief attention before application is made of these well-settled principles to the contract and facts in the case at bar.   In this, as is usual in such contracts, time is expressly declared to be essential.   It was always considered essential at law, but it has sometimes been said that equity will not or does not so regard it.   This, however, means, no more than that, if equitable grounds

in excuse of the default are shown, equity to avoid forfeiture will relieve the vendee and uphold a tender after time. It is the more willing to do this since, the price having been agreed upon, the vendor can usually be compensated for the delay by adding interest. In no other sense is the expression true. Where time is expressly made of the essence of the contract, equity will not ignore the provision, for equity follows the law, and will neither make a new contract for the parties nor violate that which they have freely and advisedly entered into. * * * It has heretofore been said that in certain cases equity will relieve the vendee from the effect of a breach of his covenant to pay upon a day certain. When such relief is granted it is only after a showing of fraud, mistake, surprise, or other ground of purely equitable cognizance, excusing the breach. Now, as the vendee in default may maintain such an action, so may the vendor call the defaulting vendee into a court of equity and compel him to show why all his rights under the contract should not be held to be at an end. The vendor, when he prosecutes such an action, does so to cut off the possibility of any future claim by the vendee to equitable relief, which might embarrass or cloud his title. * * * But while equity will thus, in the cases indicated, refuse to recognize stipulated damages, and will often permit a vendee in default to excuse his breach as to the time of payment, and after excuse made compel the vendor to perform, it does not do so arbitrarily. The vendee must always show equitable grounds for relief before equity will interpose. (Pomeroy on Specific Performance, §335.) When an equitable showing is not made to excuse the breach, the vendor has the right in equity, as he always has at law, to retain the moneys paid by the vendee."

And it has been held that forgetfulness of a covenant

in a lease is not a mistake which can be relieved against. *Barrow* v. *Isaacs & Son* (1890), 1 Q. B. 417.

"In a case where an agreement creates a mere pecuniary obligation, so that a forfeiture incurred by its breach would ordinarily be set aside, a court of equity will refuse to aid a defaulting party, and relieve against a forfeiture, if his violation of the contract was the result of a gross negligence, or was willful and persistent. He who asks help from a court of equity must himself be free from inequitable conduct with respect to the same subject-matter." 1 Pomeroy, Equity Juris. (4th ed.) §452.

A willful forfeiture simply means one voluntarily incurred. *Parsons* v. *Smilie* (1893), 97 Cal. 647, 32 Pac. 702.

Appellants are placing themselves in the attitude of attempting to compel a specific performance of a contract without any showing that they have done 8. everything in their power toward performance on their part. It is a familiar rule that a court of equity will not compel specific performance when the complaining party has not tendered performance and done all in his power to fulfill the contract on his part. *Vawter* v. *Bacon* (1883), 89 Ind. 566; *Gas Light, etc., Co.* v. *City of New Albany* (1894), 139 Ind. 660, 678, 39 N. E. 462.

Appellants made no claim in their pleadings or in the evidence that they did not understand the terms and conditions of the contract or that there was any part of it that was uncertain or ambiguous, or that their failure to pay was occasioned by any such facts. They are entitled to no relief or consideration in the absence of an equitable showing to excuse their breach of the contract. *Stennick* v. *Jones* (1918), 252 Fed. 345, 164 C. C. A. 269.

Appellants make no claim or contention that there is

any question as to their liability to pay the unpaid installments. They give no excuse for not making such payments. There was no mistake, misunderstanding, or disagreement relative to the amount due appellees under the contract. Appellants make no claim that they were not in default in the payment of the monthly installments. They make no attempt to excuse their failure to pay. They simply neglected and without any excuse failed to make the payments as required, and without any evidence that they were ready, able, or willing to pay, ask us to reverse this judgment. This we must refuse to do. Had they, after September 10, and before suit, or even after the action was commenced, offered or tendered an amount sufficient to pay the monthly installments which were admittedly due and about which there was no question, and shown any reason for not paying the insurance premiums and taxes, and alleged and proved that they were ready and willing to make such payments in case the court found they were owing, there might be some foundation in their claim to an equitable defense. But no such claim is made. Without giving any excuse they come into a court of equity and ask to be relieved from an intentional failure to perform their contract. Equity will not lend its assistance under such circumstances.

What we have said disposes of all other questions presented by appellants.

Judgment affirmed.

Nichols, P. J., not participating.

### ON PETITION FOR REHEARING.

McMAHAN, J.—Appellants on petition for rehearing complain, among other things, that we failed to decide the question presented by the second specification 9. in their motion for a new trial. That is, that "the court erred in the assessment of the amount

of the recovery by appellants on their amended second paragraph of cross-complaint, the same being too small." This specification presupposes and is based upon the idea that there was in fact a finding or decision in favor of the party complaining, and that the court erred in assessing the amount of the recovery. This specification is not applicable where there was a general finding and decree that the party complaining take nothing. When the verdict or finding is against a party, the ground stated in the motion for a new trial should be that the verdict or decision is not supported by sufficient evidence or that it is contrary to law.

Petition for rehearing denied.