In re BROWN et al.

## FEDERAL LAND BANK OF LOUISVILLE v. BROWN et al.
### No. 7372.

Circuit Court of Appeals, Seventh Circuit.
March 6, 1941.

John S. Grimes, William Goodwyn, and J. F. Williamson, all of Louisville, Ky., for appellant.

Walter L. Clements, of South Bend, Ind., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and BALTZELL, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order of the District Court, entered May 16, 1940, confirming the report of a Special Master in a proceeding under Section 75 of the Bankruptcy Act, Title 11, § 203, U.S.C.A. The Special Master denied a motion by appellant to strike certain real estate from the schedules filed by appellees in said proceeding.

The sole question for decision is whether the appellees owned or had any interest in the scheduled land, of which the Court of Bankruptcy acquired, or, could have acquired jurisdiction. There were two tracts of land involved—one containing 167 acres, and the other 80 acres. Sometime prior to December 12, 1936, appellees had been the owners of said land, upon which there was a mortgage in favor of appellant. This mortgage was foreclosed in the State Court and title duly vested in appellant.[1] On December 12, 1936, appellees executed two instruments entitled "Sales Agreement" and in one of said agreements they offered to purchase from appellant the 167 acre tract for the sum of $6,000, to be paid as follows: $600 cash with the offer; $600 cash, on or before December 31, 1937; the balance of $4,800 to be secured by a first mortgage on the 167 acre tract, title to be transferred to

---

[1] No claim is made by appellees but that they were divested of all interest by the mortgage foreclosure. Their claimed interest is by reason of the "sales agreements" which followed.

appellees at the time of the execution of the mortgage. The other agreement offered to purchase the 80 acre tract for the sum of $4,250, to be paid as follows: $425 cash with offer; $425 cash payable on or before December 31, 1937, balance of $3,400 to be secured by a mortgage on the land, and title to be transferred to appellees at the time of the execution of the mortgage. There was excepted from the 80 acre tract "Lot No. 6 of Camp Brown."

These offers were accepted by appellant on December 21, 1936, and appellees notified to that effect. Each of the proposals to purchase contained the following provision: "Should the Offeror fail to comply with the terms hereof and make payments herein called for, the Bank shall be entitled to re-enter and take immediate possession of the above described real estate, and the Offeror shall surrender possession to the Bank immediately upon demand being made by said Bank, and all payments made by the Offeror upon this contract shall be deemed rental for the use of said land and/or liquidated damages for breach of the contract."

Other than the payments accompanying the original proposals to purchase, nothing was paid upon either of said contracts. As already noted, there was, according to the terms of the contract $600 payable upon the 167 acre tract, and $425 payable on the 80 acre tract on or before December 31, 1937. On April 7, 1938, appellees were notified by attorneys for the appellant that the contracts had been forfeited and possession was demanded. On April 11, 1938, appellees filed their petition in the instant matter, scheduling as assets the land in controversy.

■ As already noted, there was excepted from the 80 acre tract, "Lot No. 6 of Camp Brown." This lot, it appears, was subsequently sold by appellant to a third party for $250, and appellees claim they were entitled to a credit for this amount upon one of the contracts in dispute. We are satisfied there is no merit in this contention. True, appellant mailed appellees a receipt for $250, but it is too plain to admit of dispute that this was a mistake and that it should have been mailed to the purchaser of this lot. It was excepted from the description in the 80 acre contract, and appellees had no reason to think they were entitled to credit for the proceeds of its sale. Assuming, however, that appellees were entitled to credit for this $250, it was not sufficient to take care of the payment due under either contract, December 31, 1937, and there was no offer to pay the balance.

■■ There is no escape from the conclusion that appellees were, on, and subsequent to December 31, 1937, in default on each of the contracts in controversy. Under such circumstances, what property right, if any, did they have in the land? Notwithstanding the very liberal interpretation which has been placed upon Section 75, we are of the opinion that they had no interest, legal or equitable, which could be protected or administered. The purchase agreements themselves expressly provided that upon failure to make payments, appellant was entitled to immediate possession. It appears to be the law in Indiana and elsewhere that the vendee, under such circumstances, forfeits all title and interest in the property. Shelt v. Baker, 79 Ind.App. 606, 137 N.E. 74, 138 N.E. 93; Twitty v. Ross, 101 Ind.App. 387, 199 N.E. 423; 27 R.C.L. 621. According to the contracts proposed by them, as well as the applicable law, they were not, at the time of the filing of the instant petition, entitled to possession. In other words, their possession after default was wrongful and they became liable to eviction at the will of the appellant.

It follows, therefore, that appellees were without title, interest or right of possession by which the land in controversy could properly be subjected to the jurisdiction of the Bankruptcy Court. It was improperly included in the schedule filed by appellees and should have been stricken therefrom.

The cause is therefore reversed, with directions to proceed in conformity with the views herein expressed.