INB TRUST NO. 337, Mirko Kljajic
d/b/a U–Go Electric, Appellants–
Plaintiffs,

v.

Dimitri VELJANOSKI and Milutin
Veljanoski, Appellees–
Defendants.

No. 45A05–9108–CV–263.

Court of Appeals of Indiana,
Fifth District.

June 18, 1992.

Rehearing Denied Sept. 1, 1992.

Gregory A. Sobkowski, Bonnie C. Coleman, Hodges, Davis, Gruenberg, Compton & Sayers, P.C., Merrillville, for appellants-plaintiffs.

Joseph O'Connor, O'Connor & Weigle, Hammond, for appellees-defendants.

BARTEAU, Judge.

## INTRODUCTION

This appeal pits the ownership rights of a bona-fide purchaser for value at a sheriff's sale against those of a judgment debtor whose property was sold even though he paid what he was told by the court clerk was the full amount of the judgment before the sale.

Dimitri Veljanoski's house was scheduled to be sold at a sheriff's sale because he had not paid a default judgment entered against him in a contract dispute. Three days before the sale, Veljanoski paid to the court the amount of the judgment as represented to him by the deputy clerk of the Lake Superior Court—an amount less than the actual amount of the judgment. The clerk recorded the payment, but did not notify the sheriff that the judgment had been satisfied. The sale proceeded, and Indiana National Bank Trust No. 337 ("INB"), the bona fide purchaser, bought Veljanoski's home. The trial court set aside the sale, reasoning that Veljanoski properly relied on the clerk's representation as to the amount of the judgment. Although INB phrases its argument as several issues, the dispositive issue in this case is whether the trial court abused its discretion when it exercised its equitable powers to set aside the foreclosure sale because Veljanoski paid the amount of the judgment as represented to him by the clerk. We find no abuse of discretion and affirm the decision of the trial court.

## FACTS

Mirko Kljajic (plaintiff-nominal appellant), obtained a default judgment on a mechanic's lien against Dimitri and Milutin Veljanoski (appellees) for $915.00—the balance due for electrical work Kljajic performed on Veljanoski's newly-built home plus $320 in attorney fees and costs. When Veljanoski did not pay, Kljajic moved for an order of foreclosure sale. At the hearing on the motion, the trial court informed Veljanoski, who appeared pro se, that if he did not pay the judgment within thirty days, his house would be sold. Veljanoski made no such payment and the trial court entered an ex-parte order of sale of Veljanoski's property and awarded an additional $150 in attorney's fees to Kljajic. Kljajic's lawyer, Kasich, mailed a copy of the order of sale, which included mention of the additional award of $150, to Veljanoski. The total amount of the judgment, in addition to accrued interest, was $1,287.37.

Apparently motivated by the impending sale, Veljanoski paid $50 to the clerk's office, which forwarded the check to Kasich. Kasich, who wrote Veljanoski that he was insulted by the insignificant amount of the check and that "we will continue ... [foreclosure] ... until the full balance of approximately $1,200.00 is [paid]." A month later, Veljanoski paid another $50 and Kasich replied as before, but more precisely, "the Sheriff's office has computed your obligation at $1,287.37. Unless you pay that amount, in full, it is my understanding that your house will be sold [four days from now]."

One day after Kasich's letter and three days before the sale, Veljanoski went to the clerk's office and apparently asked the clerk how much he owed on the judgment. The deputy clerk consulted the Judgment

Docket and informed Veljanoski he owed $932. Veljanoski gave the clerk a check for that amount. After receiving the check, the deputy clerk wrote the words "to satisfy" on the Judgment Docket. The deputy clerk later testified that "to satisfy" meant the judgment had been "paid in full," and the only thing left was for Kasich to pick up the check and attest to satisfaction of judgment. Unfortunately, although the order of sale and the $150 in attorney fees had been recorded in the *Order Book;* no corresponding entry was made in the *Judgment Docket* on which the clerk relied in reporting the amount of the judgment to Veljanoski. Thus, the amount was incorrect and, because the order of sale had not been entered on the Judgment Docket, the clerk did not notify the sheriff that the judgment had been satisfied.

The sale took place as scheduled and the property was sold for $67,000 to INB. Veljanoski moved to set aside the sale, arguing he had satisfied the judgment by paying $932 to the clerk who in turn wrote "to satisfy" in the Judgment Docket. INB argued that Kasich's letters put Veljanoski on notice that he owed about $1,200 and that the house was scheduled for sale. According to INB, Veljanoski should have questioned the $932 figure the deputy clerk gave him and should have notified the sheriff of the payment. After a hearing, the trial court concluded "the judgment was in fact satisfied and that the sheriff sale ... was null and void, whereby vested no title in the purchasers," reasoning that Veljanoski had relied in good faith on the clerk's statements.

A month later, the trial court amended its judgment, determining that the sale was valid because the judgment had not been completely satisfied. However, continued the court, Veljanoski

> "relied upon the representation of the Clerk's office as to the amount necessary to pay and satisfy said [default] judgment and that it is within this Court's discretion to set aside any sale in the

interest of justice as set forth in the original order and it is therefore the order of this Court that the Sheriff's sale be set aside and that title duly vested in [Veljanoski]."

(R. 198). The amended judgment also ordered Veljanoski to pay the $255 he still owed on the judgment within ten days.

On appeal, INB argues (1) Veljanoski was not entitled to rely on the clerk's error because the clerk consulted the Judgment Docket, a secondary reference, instead of the Order Book; (2) equity favors INB because Veljanoski failed to ascertain the true amount of his debt despite notice from Kasich; and 3) INB's position as a bona fide purchaser, who was not a party to the underlying dispute, is superior to Veljanoski's position as a judgment debtor.[1]

## DECISION

■ The vacation of a sheriff's sale is within the sound discretion of the trial court, which we will not disturb absent a showing of an abuse of that discretion. *Smith v. Federal Land Bank of Louisville* (1985), Ind.App., 472 N.E.2d 1298, 1302.

■ The crux of INB's argument is that it is the bona fide purchaser whose ownership rights are superior to those of Veljanoski. We are aware of the protection afforded bona fide purchasers, and we agree with the soundness of the doctrine. In the situation presented here, however, equitable principles warrant finding against the bona fide purchaser. As stated by the Illinois Supreme Court:

> "The doctrine of a bona fide purchase is purely an equitable one, and should not be extended farther than equitable principles warrant. It is a fundamental equitable conception that a subsequent holder for a valuable consideration without notice has no higher right than a prior holder equally innocent and with equal right of ownership. A title, because it is subsequent, is not the better one for that reason, alone."

1. Veljanoski attacks the procedural validity of the sale but does not dispute INB's claim that it is a bona fide purchaser.

*Mitchell v. Sherman E. McCewen Assoc.* (1935), 360 Ill. 278, 196 N.E. 186, 189, *cited in* 92 C.J.S. *Vendor & Purchaser* § 320 (1955). Veljanoski relied on the representations of the court clerk and paid the amount he was told he owed on the judgment. The court did not abuse its discretion in vacating the sale in light of this mistake.

INB argues Veljanoski was not entitled to rely on the clerk's representations because the clerk consulted only the Judgment Docket and not the Order Book, which, according to INB is the only official court record. Without discussing in detail INB's argument on this issue, we note that Veljanoski did not rely on the entry in the Judgment Docket. He relied on the clerk's representation, and has "the benefit of the presumption that the officer had done his duty." *Sowles and White v. Harvey* (1863), 20 Ind. 217, 218.

INB also argues that equity should not favor Veljanoski because the letters he received from Kasich, Kljajic's attorney, put Veljanoski on notice the debt was approximately $1,200 and that the property was about to be sold. INB cites *Estate of Jackson* (1980), Ind.App., 409 N.E.2d 1251. Jackson's estate won summary judgment against the state department of revenue. The judgment was entered in the Order Book, but not the Estate Docket, which showed only that a motion for summary judgment was filed. The state then filed its (then-mandatory) motion to correct errors a day late. When the estate threatened to file a motion to dismiss, the state sought an order in the trial court directing entry of the judgment in the Estate Docket Book, arguing that the judgment was not final until it was entered in the Estate Docket. Because no such entry had been made, the judgment was not final and its motion to correct errors was not untimely. In other words, the state's action, i.e., filing the motion to correct errors after summary judgment, was inconsistent with its claim that no final order had been entered. This court affirmed the trial court's refusal to order an entry in the estate docket, reasoning that it was apparent the state knew summary judgment had been entered (as evidenced by its filing of a motion to correct errors). Therefore, the absence of the entry of the final order in the Estate Docket did not harm the state.

Here, unlike in *Estate of Jackson*, there is no indication Veljanoski admitted to the amount of the judgment or in any way acted in a manner inconsistent with his argument in support of the vacatur of the sale. Although the letters from his adversary's attorney contained the amount of the judgment, it was reasonable that he would ask the clerk (presumably an neutral party) the amount of the judgment.

INB argues equity should not favor Veljanoski because he had numerous opportunities to prevent the sale and his willful failure to take advantage of those opportunities caused the sale. Because Veljanoski failed to diligently protect his rights, equity may not now intervene to protect him. INB cites *Shelt v. Baker* (1922), 79 Ind. App. 606, 137 N.E. 74. The defendants in *Shelt* sought equitable relief from a forfeiture of their land contract with the plaintiff. The trial court's refusal to grant this relief was affirmed by this court because it was the defendant's willful failure to pay the amount owed under the contract that resulted in the forfeiture.

We agree that Veljanoski seemed less than willing to pay the default judgment when it was entered. However, his actions with regard to the judgment are relevant to a balancing of equities between Veljanoski and Kljajic, not between Veljanoski and INB. Further, Veljanoski did attempt to prevent the sale by paying the judgment before the sale occurred. His efforts, however, were thwarted by a mistake in the clerk's office.

INB also asserts that equity may not intervene here because the law clearly defines the rights of the parties. We find no law, however, that settles this dispute. A mistake was made and equity may intervene to correct that mistake. Finally, INB complains it is left without adequate remedy. Veljanoski could easily make the same argument. Veljanoski acted to protect his interests by going to the clerk's office and

tendering the amount requested to satisfy the judgment. The trial court did not abuse its discretion by vacating the sale under these circumstances and is therefore affirmed.

AFFIRMED

RUCKER and SHARPNACK, JJ., concur.