**BOARD OF SCHOOL TRUSTEES OF SALEM COMMUNITY SCHOOLS,**
Appellant–Defendant,

v.

**Roberta J. ROBERTSON,**
Appellee–Plaintiff.

No. 88A05–9308–CV–296.

Court of Appeals of Indiana, Fifth District.

June 30, 1994.

Transfer Denied Dec. 16, 1994.

Peter G. Tamulonis, Kightlinger & Gray, Indianapolis, for appellant.

Richard J. Darko, Mary Jane LaPointe, Lowe Gray Steele & Hoffman, Indianapolis, for appellee.

SHARPNACK, Chief Judge.

The Board of School Trustees of Salem Community Schools ("the Board") appeals from a partial summary judgment in favor of Roberta J. Robertson in Robertson's suit seeking, *inter alia*, reinstatement to her teaching position, back pay, and damages. We affirm. The Board raises three issues for our review which we rephrase as:

1. whether the trial court misconstrued Ind.Code § 20–6.1–6–4 when it concluded that the Board had violated the statute by denying Robertson's request for an extension of her maternity leave;

2. whether Robertson quit or abandoned her teaching position, thereby waiving any claims; and,

3. whether there is a genuine issue of material fact which precludes summary judgment in favor of Robertson.

Robertson was employed as a teacher at Salem High School. On September 9, 1987, Robertson gave written notice of her pregnancy, expected due date of March, 1988, and intention to take a maternity leave to school principal Max Bedwell and school superintendent Morris J. Rosenbaum. Robertson indicated her desire to continue working until the birth of her child, so long as it was medically possible to do so.

On March 4, 1988, Robertson's child was born. On March 14, 1988, Robertson sent a correspondence to Rosenbaum which stated, in pertinent part, "Due to the early arrival of my little girl I am requesting maternity leave effective March 4, 1988. I have 23 sick and personal days. After these are used the remainder of the time off will be uncompensated." Record, p. 77. On March 15, 1988, Rosenbaum informed Robertson that her maternity leave had been approved:

"The Board of Education granted your maternity leave, last evening, to begin on March 4, 1988, a little after the fact due to the early arrival. Bobbi you have a total of 23 days sick [sic] and personal days, with a Doctor's statement of your being unable to work, you will be compensated for all 23 days. After these days are used, the remainder of the semester will be uncompensated.

If your intentions are to resign at the end of this school year, I would appreciate a letter as early as possible. I promise it will not affect your pay from the above accumulated sick leave.

We will be most happy if you decide to return, but I understand the importance of being at home with a new baby."

Record, p. 78. Robertson responded March 17, 1988:

"Enclosed please find a statement from my doctor indicating the amount of time I will be unable to work. I believe the six weeks is customary, although I am feeling great and could come back to work today.

At this point in time, I have no plans to resign at the end of the year. I am very happy at Salem, and unless unforseen [sic] circumstances should arise, I intend to return in August. I would let you know as soon as I even suspected something might interfere with my returning, as I realize the importance of having ample time to find a replacement. Hopefully that will not be necessary."

Record, p. 79. By letter dated June 6, 1988, Robertson requested an extension of her maternity leave:

"Please consider this a request to extend my maternity leave. Although I had not intended to do so, I believe it is in Bailey's best interest for me to stay with her for the first year.

According to the Master Contract, I am entitled to a leave of up to one year. Therefore my year should be exhausted on March 4, 1989. The contract also indicates that I would be offered a position the first semester following my leave. This would be Fall of 1989. I realize the complications of returning to the classroom in the middle of a semester, however, I would be willing to do so if that would be necessary, as I do not want to jeopardize my position at Salem."

Record, p. 80. On July 8, 1988, Rosenbaum informed Robertson of the Board's decision:

"I am sorry to inform you but the Board of School Trustee [sic] of Salem Community Schools rejected your request for an extension of your maternity leave.

The decision was made at the regular meeting on July 7, 1988. The reason was it would be unfair to the students to have two teachers in one year and would be unfair to a new employee to be given only a one year contract. The Board was also concerned about the quality of a teacher that would be employed only for a one year period...."

Record, p. 81. On July 24, 1988, Robertson wrote a letter to Bedwell, indicating that her situation required her to stay at home with her daughter for the first year and that she planned to file a grievance. On August 8, 1988, Robertson submitted her written grievance and on the accompanying cover letter hand-wrote the following note:

"Mr. Rosenbaum—

By signing this form, I am indicating that pending the Board's decision I am willing to return to school on 3/4/89 or 8/89 but *not* in 8/88. This should give Mr. Bedwell authorization to hire someone for the 88/89 school year or permanently depending on the Board's decision. I consider myself to be on maternity leave until the grievance procedure is complete and I am aware of the final decision.

\*     \*     \*     \*     \*     \*

R. Robertson"

Record, p. 84. On August 18, 1988, the Board heard Robertson's appeal for reconsideration of her request and decided not to reverse its previous decision. The Board also voted to hire a replacement teacher for the 1988–89 school year. Rosenbaum informed Robertson of the Board's decision by letter dated August 22, 1988. In July, 1989, Robertson informed the Board of her continued interest in resuming her position, and Rosenbaum informed her that there were no openings in her teaching department.

On June 22, 1990, Robertson filed a four-count complaint against the Board seeking, *inter alia*, reinstatement to her teaching position, back pay, and damages. Count I of Robertson's complaint alleged that by refusing to extend her maternity leave, the Board had violated I.C. § 20–6.1–6–4, which provides for pregnancy-related leaves for teachers.

On November 8, 1990, Robertson filed a motion for summary judgment on all four counts of her complaint. On December 17, 1990, the Board filed its brief in opposition to Robertson's motion for summary judgment on all counts. On April 29, 1993, the trial court granted summary judgment in favor of Robertson on count I of her complaint and denied the Board's cross-motion for summary judgment on that same count, concluding that by refusing to extend Robertson's maternity leave, the Board violated Indiana's teacher pregnancy-related leave statute, I.C. § 20–6.1–6–4.

■■ In our review of a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories, and, where applicable, testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by the trier of fact.[1] *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party and reverse the entry of summary judgment. *Woodward Ins., Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. If no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we must affirm the summary judgment. *Id.* The fact that both parties to an appeal requested summary judgment does not alter our standard of review. We consider each motion separately to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Fischer v. Kaylor* (1969), 145 Ind.App. 148, 250 N.E.2d 19.

**I**

The Board contends first that the trial court misconstrued I.C. § 20–6.1–6–4. The Board argues that the trial court's construction is erroneous because it conflicts with the plain meaning of the statute, renders the notice requirement superfluous, effectively adds language to the statute which allows a teacher to extend a leave unilaterally, and violates public policy. We disagree with each of these arguments.

Indiana Code § 20–6.1–6–1 provides, in pertinent part, that "[a]ny teacher who is pregnant shall be granted a leave of absence for the period provided in and subject to the provisions of section 4 [IC 20–6.1–6–4]. . . ." I.C. § 20–6.1–6–1. Indiana Code § 20–6.1–6–4, provides, in pertinent part:

"A teacher who is pregnant may continue in active employment as late into pregnancy as she wishes, if she can fulfill the requirements of her position. Temporary disability caused by pregnancy shall be governed by the following:

> (1) *Any teacher who is pregnant shall be granted a leave of absence any time between the commencement of her pregnancy and one (1) year following the birth of the child, if she notifies the superintendent at least thirty (30) days before the date on which she wishes to start her leave. She shall notify the superintendent of the expected length of this leave, including with this notice either a physician's statement certifying her pregnancy or a copy of the birth certificate of the newborn, whichever is applicable. . . .*"

I.C. § 20–6.1–6–4(1) (emphasis added). This case presents us with an issue of first impression involving the interplay of the statutory requirement that the teacher notify the superintendent at least "thirty (30) days before the date on which she wishes to start her leave" with the requirement that the notice inform the superintendent of the "ex-

---

**1.** We note that both motions for summary judgment and the Board's brief in opposition to Robertson's motion for summary judgment were filed prior to the January 1, 1991 effective date of the designation requirements currently found in Ind.Trial Rule 56(C). Robertson's brief in opposition to the Board's motion for summary judgment and the parties' reply briefs were filed after January 1, 1991.

pected length of this leave." I.C. § 20–6.1–6–4(1).

The construction of a statute is a question of law for the court. *Paul v. Metropolitan Sch. Dist. of Lawrence Township* (1983), Ind.App., 455 N.E.2d 411, 412.

> "[T]his court will give meaning to the words used when such meaning is clear and unambiguous. [citation omitted] It is only where the meaning of the statute is unclear or ambiguous, or where more than one construction of the statute is possible, that we may construe the statute. [citations omitted] This court will always construe a statute so as to give effect to the apparent intent of the legislature.... [T]he court may not view a statute in isolation, but rather, must ascertain its effect and application by viewing it in context with the entire act."

*Id.* at 412–13. Words and phrases will be given "their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute." *State ex rel. Pearson v. Brown* (1989), Ind.App., 537 N.E.2d 534, 535, *trans. denied.*

The Board contends that the trial court's construction conflicts with the plain meaning of the statute because, "a school board is required to grant only *one* ('a') leave of absence to a pregnant teacher. Whether a consecutive leave should be granted, whether a leave should be extended, is purely a matter of school board discretion." Appellant's brief, p. 13. The Board recognizes that if Robertson originally had requested a one-year leave of absence, the Board would have been required to grant the request. Robertson responds that the trial court's construction is consistent with the plain meaning of the statute because she never asked for more than one leave of absence. Robertson argues that she merely requested the full calendar year allowed by the statute, and that she complied with the terms of the statute when she notified Rosenbaum of the "expected" length of her leave. We agree with Robertson.

Indiana Code § 20–6.1–6–1 provides that a pregnant teacher "shall" be granted a leave of absence for "the period provided in and subject to the terms of" I.C.

§ 20–6.1–6–4. Indiana Code § 20–6.1–6–4 then provides that a pregnant teacher "shall" be granted a leave of absence "any time" between the commencement of the pregnancy and one year following the birth of the child. Thus, a teacher potentially could take a pregnancy-related leave for the entire gestational period plus one year following the birth of the child. Likewise, where a teacher requests a leave of absence for the one-year period following the birth of the child, such leave must be accommodated by the school, provided that the teacher has complied with the notice requirements.

The Board contends that once it has granted a leave, it is entitled to hold a teacher to her original representation as to the length of the leave. However, it is the Board's interpretation which conflicts with the plain language of the statute. If the legislature had intended to limit a teacher to the original representation as to the length of leave, it would not have used the phrase "*expected* length of leave." The ordinary and usual meaning of the term "expected" is "anticipated" or "regarded as likely to happen." *The Random House College Dictionary* (rev. ed. 1988). It does not mean "definite." Adopting the Board's interpretation would require us to render meaningless the word "expected," and this we are not free to do. *Myers v. Greater Clark County Sch. Corp.* (1984), Ind.App., 464 N.E.2d 1323, 1327 (no part of a statute will be held meaningless if it can be avoided), *reh'g denied.*

We are unconvinced that the trial court's interpretation of the statute renders the notice requirement superfluous. In the present case, the purpose behind the notice requirement was fulfilled when Robertson notified Rosenbaum and Bedwell in September, 1987, of her pregnancy, anticipated delivery date of March, 1988, and intention to take a leave following the birth of her child. Similarly, this construction does not add language to the statute which allows a teacher to extend (or reduce) the length of leave without regard for the orderly operation of the school. We recognize the interests of the Board in the orderly planning and operation of the school. By its use of the phrase

"expected length of leave," however, the legislature granted teachers a certain degree of flexibility with regard to determining the length of a pregnancy-related leave. Where, as here, a teacher informs the superintendent of the "expected" length of her leave as required by the statute, subsequently decides to take the full duration of leave allowed under the statute, and gives the school board ample notice of the change in leave duration (in this case, approximately two and a half months notice), a school board must accommodate the leave.

Further, this construction does not subvert public policy interests to "the whim of an individual." Appellant's brief, p. 16. We agree with Robertson that the Board's position sets up a false dichotomy between the interests of the school corporation and the interests of teachers exercising their statutory right to maternity leave. In the case of *Stewart v. Fort Wayne Community Schs.* (1990), Ind., 564 N.E.2d 274, *reh'g denied, cert. denied,* —— U.S. ——, 112 S.Ct. 169, 116 L.Ed.2d 133 (1991), the Indiana Supreme Court discussed the policies behind Indiana's teacher tenure law. *Id.* at 278–79. The court noted that the primary purpose behind the teacher tenure law is,

> "the promotion of the public good through the creation of a competent cadre of teachers in the state. The law is primarily intended to 'promote . . . the welfare of the state and of the school system by preventing the removal of capable and experienced teachers at the political or personal whim of changing office holders.' *State ex rel. Anderson v. Brand* (1937), 214 Ind. 347, 351, 5 N.E.2d 531, 532, *rev'd on other grounds sub nom. Indiana ex rel. Anderson v. Brand,* 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938); *see also School City of Lafayette v. Highley* (1938), 213 Ind. 369, 376–77, 12 N.E.2d 927, 930 (purpose of the act is to protect the educational interest of the state, not to grant special privileges to any class of teachers); . . ."

*Stewart,* 564 N.E.2d at 278. By analogy, the educational interests of the state, as well as those of a particular school system, are furthered by protecting competent teachers who also choose to become parents.

The Board's stated reasons for denying Robertson's leave request were: the unfairness to students of having two teachers in one year; the unfairness to a new employee of having only a one year contract; and, concerns regarding the quality of teacher that would be employed for only a one year period. These concerns arise whenever any teacher takes a pregnancy-related leave; nonetheless, the legislature has determined that a school board must grant such leaves.

## II

The Board contends next that the trial court erred because even if Robertson was entitled to the leave she requested, she quit or abandoned her position, thereby waiving any claims. The Board argues that Robertson "voluntarily abandoned her position and/or waived any further rights by failing to report to work in the fall of 1988 and expressly giving 'authorization' to hire a 'permanent replacement.' . . . [W]hether characterized as a mutual rescission, voluntary quit, abandonment, or waiver, [Robertson] should be precluded from claiming additional entitlements." Appellant's brief, pp. 20–21. We disagree.

■ In order for a teacher's conduct to be interpreted by a school board as a resignation, it must be shown that the resignation was voluntary and intentional. *Joyce v. Hanover Community Sch. Corp.* (1971), 150 Ind.App. 296, 276 N.E.2d 549, 555, *overruled in part on other grounds, Myers, supra,* 464 N.E.2d at 1327. Similarly, a waiver is "a voluntary yielding up of some existing right, . . . an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it." *Shelt v. Baker* (1922), 79 Ind.App. 606, 616, 137 N.E. 74, *reh'g denied,* 79 Ind. App. 606, 138 N.E. 93, *trans. denied* (1923).

■ Contrary to the Board's position, the material facts reveal only that Robertson wanted to take the full one-year maternity leave to which she was entitled *and* to retain her teaching position. The facts simply do not support the conclusion that Robertson voluntarily quit or abandoned her position.

## III

Finally, the Board asserts that at the very least, there is "a genuine issue of material fact on the question of quit/abandonment/waiver which should preclude the entry of summary judgment in favor of [Robertson]." Appellant's brief, p. 21. There are no genuine issues of material fact, however, regarding the sequence of events giving rise to this litigation or the content of the parties' written communications to one another. The trial court correctly observed that "although the parties differ as to their legal significance, the material facts appear undisputed." Supp. Record, p. 1.

Accordingly, we affirm the trial court's order of summary judgment on count I of Robertson's complaint and remand to the trial court for further proceedings.

AFFIRMED.

BARTEAU and NAJAM, JJ., concur.