## BOLDT *v.* EARLY.

[No. 4,665. Filed February 26, 1904. Rehearing denied May 17, 1904. Transfer denied June 28, 1904.]

VENDOR AND PURCHASER.—*Specific Performance.—Discretion of Court.*— The awarding of specific performance is a matter, not of absolute right, but of sound discretion of the court. *pp. 441, 442.*

SAME.—*Specific Performance.—Burden of Proof.*—In a suit for specific performance, the burden is upon plaintiff to show a full and complete performance or offer to perform on his part. *p. 442.*

CONTRACTS.—*Specific Performance.— When Time not Essence of.*— Though time be not of the essence of a contract for the sale of land as originally made, it may be so rendered by the conduct of the vendor or vendee subsequent to the making of the contract. *p. 442.*

SAME.—*Specific Performance.— Vendor and Purchaser.*—The fact that there has been a considerable increase in the value of real estate after the failure of the vendee to pay an instalment of purchase money at the time stipulated in the contract for the sale thereof may be a sufficient reason for denying the vendee specific relief. *p. 442.*

CONTRACTS.—*Specific Performance.— Vendor and Purchaser.*—In a suit for specific performance of a contract for the sale of real estate, it appeared from the facts found that the purchaser failed to pay the second instalment, and the vendor gave the purchaser notice that if the payment was not made within a certain time thereafter the real estate would be sold to another. No further payment was made, and the land increased in value. After the time fixed in the notice, the purchaser tendered the balance due. *Held,* that the purchaser was not entitled to specific performance of the contract. *pp. 442–448.*

From St. Joseph Circuit Court; *W. A. Funk,* Judge.

Suit by Hilary Early against August Boldt. From a judgment for plaintiff, defendant appeals. *Reversed.*

*F. E. Osborn* and *W. A. Mc Vey*, for appellant.
*F. R. Liddell* and *T. E. Howard*, for apellee.

BLACK, J.—The appellee sued the appellant for specific performance of a contract for the sale of land. The facts, as stated in the court's special finding, were substantially as follows: July 20, 1899, the appellant was the owner in fee simple and in possession of a certain tract of land in Laporte county, Indiana, and the legal title thereof was still in him at the date of the court's finding. At the date first above mentioned the appellant entered into a written contract with the appellee for the sale of this land. By the terms of the contract, which was signed by both parties, and dated July 20, 1899, the appellant agreed to sell to the appellee the land in question, described, for the sum of $2,300, "of which I have received this day $10, and agree to take $490 in thirty days, $500 in six months, at which time I will give a warranty deed conveying a perfect title free of any encumbrance, and take a mortgage on said land, payable in payments of $500 per year, with interest at six per cent., except one, the last note or payment to be $300. It is agreed that said notes shall be drawn payable on or before the date of ultimate maturity, and it is also agreed that payments can be made on the two specified payments first named herein, at any time previously, and the deed shall be made when the first $1,000 payment named is made. And the said Early hereby agrees to make the named payments as specified." August 25, 1899, the appellee paid the appellant under the contract $490, the latter accepting the same, and receipting to the former therefor. July 24, 1900, the appellee paid the appellant upon the contract $15.77, which the appellant accepted, receipting to the appellee therefor. July 24, 1900, the appellant caused a letter to be written to the appellee, which the latter received about the same date, advising the appellee that the time was past due for making the second payment of $500, which, by the terms of the contract, was to be made in six months from the

date of the contract, and which, therefore, was due January 20, 1900, and informing the appellee that the appellant wanted to know soon what he was going to do about it; to which letter the appellee replied, July 31, 1900, saying he would see the appellant before long, and would settle matters with him for the land. At the time of the making of the contract the appellee was a man of business experience, and was engaged in the real estate business, which he had been following for more than thirty years; and the appellant was a German, unable to read or write in either the German or the English language, and could talk the English language only brokenly, and understood it with difficulty. He had lived in the neighborhood of the land in question for thirty-one years. At the time of the making of the contract, the appellee went to the home of the appellant, and prepared the contract himself, and it was there signed by the appellee, and was signed in the name of the appellant, in his presence, and with his consent, by the appellant's son; and at the same time the appellant informed the appellee that the former was selling the land because he was in debt, and wanted to use the money he would derive from the sale for the purpose of paying his debts; and, in fact, the appellant was in debt to the amount of about $1,300, and he used the $500 paid him as aforesaid by the appellee to pay a part of said indebtedness immediately upon the payment of the same to him.

On or about August 30, 1900, the appellant with one Henry Jahns, a neighbor, who acted as an interpreter for the appellant, called upon the appellee in the city of Laporte, and demanded of the appellee that he pay the $500 then past due; and the appellee then informed the appellant that the former had no money, and could not get any then, and could not make the payment. The appellant informed the appellee that the former needed the money to pay his debts, and the appellee then stated to the appellant that the former expected to sell a piece of land in a short

time, from which he would get money to make the payment, and that he would make the payment soon; and the appellant then informed the appellee that unless he made the payment by Christmas, he could not have the land, and that the appellant would sell it to some one else. On or about October 1, 1900, Herman Boldt, a son of the appellant, at the latter's request, again called upon the appellee in the city of Laporte, and inquired of him if he had as yet arranged to make the payment, to which the appellee replied that he could not pay then; that he had not yet been able to raise the money, but he would do so soon; in response to which Herman Boldt informed the appellee that unless he made the payment by Christmas, he could not have the land, but the appellant would sell it to some one else. The appellee did not make any further payment before Christmas, 1900, and did not go to the appellant and give him any further information, or make any other arrangement with him whatever; but February 9, 1901, he left the State of Indiana, and did not return until July 4, 1901. July 5, 1901, the appellant entered into a written contract with one Charles H. Tuesburg, by which the appellant promised and agreed to sell and convey the land in question for the price of $4,000, of which Tuesburg at the time paid the appellant $200, which the appellant used and applied to the payment of his debts; but the appellant at the date of the court's finding had not executed to Tuesburg any deed of conveyance for the land.

At the time of the making of the contract of the appellant and the appellee the land in question was marsh land, uncultivated and unimproved, and there was a growing demand for such lands in that neighborhood, and such lands were increasing in value, of which fact the appellee had knowledge, and the appellant also knew that the land in controversy was increasing in value, and he fully understood the value of the land, and understood the contract between him and the appellee and all its provisions; and

when the appellant and Jahns called on the appellee, August 30, 1900, the appellant had learned and knew that the lands in the neighborhood in question were increasing in value. From the early spring of 1899 to August 30, 1901, the land in question had gradually increased in value, about twenty-five to forty per cent. July 11, 1901, the appellee learned that the appellant had entered into a contract for the sale of the land to Tuesburg, and the appellant on that day informed the appellee that the former had sold the land to Tuesburg. Thereafter, on August 30, 1901, the appellee called upon the appellant at his home and offered him, first, $660, and presented three notes dated August 30, 1901, signed by the appellee, and payable to the appellant, two of them for $500 each and one for $300, due on or before one, two, and three years from date, respectively, with interest at the rate of six per cent. from date until paid, and a mortgage on the land in question securing the notes, signed and acknowledged by the appellee, and demanded of the appellant that he execute to the appellee a deed for the land. Immediately thereafter, on the same occasion, the appellee offered the appellant $1,160 and two notes, signed by the appellee, and payable to the order of the appellant, dated August 30, 1901—one for $500, due on or before one year after date, and the other for $300, due on or before two years after date—and also offered a mortgage on the land to secure the notes, executed and acknowledged by the appellee; in response to which the appellant stated to the appellee that he had sold the land. At the time for the payment of $500 and the delivery of the deed, January 20, 1900, neither party did anything toward the performance of the contract. August 31, 1901, the appellee brought this suit in the Laporte Circuit Court, and filed in the office of the clerk of that court a *lis pendens* notice of the bringing of the suit. The appellee did not at any time after the making of the contract in suit until August 30, 1901, offer to

Boldt v. Early.

pay the $500 which came due January 20, 1900, nor did he during that period execute or offer to execute notes and mortgage for the deferred payments. At all times from the date of the contract up to Christmas of the year 1900, the appellant was ready, willing, and able to accept and receive the payments and notes and mortgage and execute and deliver to the appellee a warranty deed conveying title to the land in accordance with the contract. He never executed or tendered to the appellee a deed of conveyance for the land. August 11, 1900, the appellant authorized the appellee to cut the grass on the land, which he had done. April 12, 1901, the appellee paid to the treasurer of Laporte county $11.52 for the taxes assessed against the land for the year 1900. The court found that about the end of August, 1900, the appellant agreed with the appellee to an extension of the time for making payment upon the contract until Christmas, 1900. August 30, 1901, the appellee went to the appellant prepared to pay the money then due from the former to the latter upon the contract, and prepared to execute the notes and mortgage for the balance of the purchase money for the land, and prepared to tender said money and said notes and mortgage, but was informed by the appellant that he could not have the land, and that the appellant refused to carry out the terms of the contract with the appellee.

Upon these facts the court stated conclusions of law as follows: "(1) That the plaintiff is entitled to a specific performance of said contract by the defendant; (2) that the defendant shall execute and deliver to the plaintiff a good and sufficient warranty deed for said real estate, and should receive therefor from the plaintiff the amount of money, notes, and mortgage tendered to him August 30, 1901, or the full amount of the balance of the purchase price which was due August 30, 1901, in cash, at the option of the plaintiff, as provided in said contract; and that if the defendant fails within a reasonable time to

execute and deliver said deed and receive said consideration therefor, a commissioner should be appointed by the court to execute such deed, on the payment of such consideration into the hands of the clerk of this court for the use of the defendant."

By the terms of the contract the appellant after receiving, at its date, the payment of $10, and after receiving in thirty days thereafter $490, was to receive in six months after the date of the contract—that is, on January 20, 1900—another payment of $500. He was then to execute the deed of conveyance, and to take a mortgage on the land to secure payment of the remainder of the purchase money, payable in three instalments, represented by three notes bearing interest at six per cent.—two for $500 each, to mature ultimately one in one year and the other in two years from January 20, 1900, and one for $300, to mature ultimately in three years from that date; but these notes were to be drawn payable on or before such dates of ultimate maturity. The appellee agreed to make the payments as thus specified. There was also a provision that payments might be made on the instalment of $490 due in thirty days and the instalment of $500 due in six months at any time before their maturity, and in this connection it was provided that the deed should be made when the first $1,000 of the purchase money was paid. When the appellee offered to make payments and to give notes and mortgages on August 30, 1901, the instalment of $500 payable January 20, 1900, had been due one year and seven and one-third months, and the time of this offer was more than seven months after the date designated for the ultimate maturity of the first note for $500 contemplated by the contract.

The court rendered its special finding and its judgment September 8, 1902. At that date, if the contract had been carried out according to its terms, all the instalments of the purchase money would have been due except the final in-

stalment of $300, which would have ultimately matured in less than five months thereafter. In any view of the case, the appellant could not have been regarded as having been placed in a position where he could be required to make the deed before August 30, 1901. The court concluded, September 8, 1902, that he should execute the deed, and should receive therefor the amount of money, notes, and mortgage tendered to him, August 30, 1901, or the full amount of the balance of the purchase price due at that date in cash, at the option of the appellee.

It will have been observed that the court found that two offers of money, notes, and 'mortgages were made by the appellee on that day; but we notice that the judgment provided that the appellant should execute the deed and receive from the appellee $1,160, "being payments and interest due on August 30, 1901, together with his promissory notes for $800, secured by mortgage on the said land for the balance of the purchase money, or that he receive from the plaintiff, at the option of the plaintiff, $1,960 in cash, being the total amount due from plaintiff to defendant for said real estate on August 30, 1901." In stating in the finding of facts the offer of August 30, 1901, which included the proposition to pay $1,160, it is stated that the appellee offered the appellant two notes dated August 30, 1901—one for $500, due on or before one year after date, and one for $300, due on or before two years after date. The maturity of each of these notes would be seven months later than the ultimate maturity provided for in the contract. The notes, by the terms of the contract, were to draw interest at six per cent. It does not appear from the finding of facts that the notes offered along with the $1,160 in cash provided for any interest, and in the conclusions of law and the judgment it was not required that the notes to be given by the appellee should provide for any interest.

It is well settled that the enforcement of specific performance of contracts rests in the sound discretion of the court,

and the court will do what seems just and equitable under the peculiar circumstances of the particular case before it for decision. The awarding of specific performance by a court of equity is a matter, not of absolute right, but of sound discretion; and a bill may be resisted on much weaker grounds than are necessary for its maintenance. *Vawter* v. *Bacon,* 89 Ind. 565.

In a suit for specific performance the plaintiff must show that he has been ready, willing, and eager to perform, and the burden is upon him to show a full and complete performance or offer to perform on his part. *Forthman* v. *Deters,* 206 Ill. 159, 69 N. E. 97.

Though time be not of the essence of the contract originally, it may be so rendered by the conduct of the vendor or vendee subsequent to the making of the contract. *Jackson* v. *Ligon,* 3 Leigh (Va.) 161, 188.

If, succeeding the fault of the vendee by failure to pay an instalment of the purchase money at the time stipulated in the contract, there has been a considerable increase in the value of the property, this may be a sufficient reason for denying him specific relief; for the contract would thereby become an unequal one, and its specific enforcement would encourage delays by enabling the vendee to take advantage of changes in his favor, though he might have delayed intentionally, having purchased for speculation, and not meaning to perform unless favorable changes occur. *Smith* v. *Lawrence,* 15 Mich. 499. See, also, *Mahon* v. *Leech,* 11 N. D. 181, 90 N. W. 807.

In *Brashier* v. *Gratz,* 6 Wheat. 528, 5 L. Ed. 322, it was said by Mr. Chief Justice Marshall: "Another circumstance which ought to have great weight, is the change in the value of the land. It was purchased at $22.50 per acre. Mr. Brashier [the plaintiff] failed to comply, and was unable to comply with his engagements. More than five years after the last payment had become due, the land suddenly rises to the price of $80 per acre. Then he

Boldt v. Early.

tenders the purchase money, and demands a specific performance. Had the land fallen in value, he could not have paid the purchase money [he being insolvent]. This total want of reciprocity gives increased influence to the objections to a specific performance, which are furnished by this great alteration in the value of the article."

Lapse of time, after maturity, before payment of purchase money, may generally be compensated by interest; and time will not be regarded as of the essence of such a contract as the one in suit merely because definite dates of performance are designated therein. *Jackson* v. *Ligon, supra;* Fry, Spec. Perf. (3d Eng. ed.), §1077. Neither can inability to pay the purchase money when due, not attributable to the fault of the vendor, be regarded by the court as any excuse for failure to pay at maturity, or upon demand thereafter.

In *Ewing* v. *Crouse,* 6 Ind. 312, where the provisions of the contract seemed to show that the parties at the time of the sale contemplated a literal performance within the period named, it was said that, if this view were incorrect, yet the subsequent conduct of the parties afforded sufficient proof that they regarded and expressly treated the time agreed on for the payment of an instalment of purchase money as an essential element in the contract.

The appellant was in debt when the contract was made, and he then informed the appellee that he was selling the land to pay his debts, and he applied upon his debts the moneys he received, which were not enough to discharge his indebtedness. The value of the land was rising gradually when the contract was made, as they both knew, and it had risen greatly afterwards. When payment, overdue, was demanded, the appellee was told that the money was needed to pay debts, which was the purpose of the sale, as he was apprised from the beginning. He was an experienced business man and dealer in real estate, and, while the land was rising greatly in value, he gave no reason for

failure to pay except his alleged inability to do so.    He had himself gone to the appellant for the making of the contract, the appellant being a man who imperfectly understood the English language, and who was desirous of freeing himself from debt.    Having wholly neglected to comply with the demand for payment during the time limited by the notice, he continued thereafter to be in default, and made no offer until after he learned that the appellee had contracted to sell to another person.    While we need not treat the extraneous matters which we thus far have recounted as being sufficient of themselves alone to make time of the essence of the contract, they are not unworthy of the observation of a court of equity in considering the notice limiting the time of payment to Christmas, 1900, and the conduct of the parties thereafter.

In Pomeroy, Contracts (2d ed.), §395, it is said: "As the doctrine that time is not essential in the performance of a contract may sometimes work injustice, and be used as the excuse for unwarrantable laches, the following rule was introduced at a comparatively late period, and is now firmly settled, which prevents the doctrine from being abused by the neglect or willfulness of either party.    If either the vendor or the vendee has improperly and unreasonably delayed in complying with the terms of the agreement on his side, the other party may, by notice, fix upon and assign a reasonable time for completing the contract, and may call upon the defaulting party to do the acts to be done by him, or any particular act within this period.    The time thus allotted then becomes essential, and if the party in default fails to perform before it has elapsed, the court will not aid him in enforcing the contract, but will leave him to his legal remedy."    It is further said in §396: "The notice can not be an arbitrary and sudden termination of the transaction; it can not put an immediate end to a pending dispute or negotiation as to the title; it must allow a reasonable length of time for the other party to perform,

and if it fails in any of these respects, it may be disregarded, and will produce no effect upon the equitable remedial rights of the party to whom it is given. The nature and object of the contract, the circumstances of the case, and the previous conduct of the parties, are important, and, indeed, controlling elements in determining the reasonableness of the notice. The notice, also, to be effectual in making the time allotted an essential element of the performance, must be express, clear, distinct and unequivocal." See, also, to the same effect, Fry, Spec. Perf. (3d. Eng. ed.), §1092 *et seq.* This rule appears, as stated by these text writers, to be well and firmly established in England and America.

In *Taylor* v. *Brown,* 2 Beav. 180, it was held that, while it was established by repeated decisions that where the contract and the circumstance were such that time was not considered as of the essence of the contract, if any unnecessary delay was created by one party, the other had the right to limit a reasonable time within which the contract should be perfected by the other, and that in cases where the time was fairly limited by notice, stating that within such a period what was required must be done, or the contract would be treated as at an end, bills for specific performance afterward filed had been dismissed by the court with costs; yet this rule was not applicable to a case of notice given during the pendency of negotiations, stating that from the time and on the day of the giving of the notice the party giving it would consider the contract at an end.

In *Benson* v. *Lamb,* 9 Beav. 502, where there was a delay of two months after the date designated for the completion of the contract, a notice of ten days then given was held sufficient to put an end to the contract, and specific performance was denied.

In *Wiswall* v. *McGowan,* 1 Hoff. Ch. 125, 138, it was said that either party to a contract for the sale of land,

where no time has been fixed, or performance at the appointed time has been waived, may limit a day at which it must be fulfilled; but this must be a reasonable period according to the nature of the contract, affording the party a reasonable time to make his preparation, and of this period due notice must be given. See, also, *Thompson* v. *Dulles,* 5 Rich. Eq. 370; *Mudgett* v. *Clay,* 5 Wash. 103, 111, 31 Pac. 424; *Chabot* v. *Winter Park Co.,* 34 Fla. 258, 15 S. E. 756, 43 Am. St. 192. And see *Rummington* v. *Kelley,* 7 Ohio 432, where there was long delay after the vendor informed the vendee of the immediate end of the contract and tendered him his notes. Specific performance was denied. We need not go so far in the case before us.

In *Hatch* v. *Cobb,* 4 Johns. Ch. 559—a suit of the vendee for specific performance—it appeared that the plaintiff had made default in the payments, which, by the contract, were made a condition precedent to the conveyance, and the defendant had accepted one small payment subsequent to such default, but about six months thereafter the defendant repeatedly called for payment, and gave notice that if the plaintiff did not pay him he should be obliged to part with his interest in the land. No payment being made, the defendant assigned over his right to a third person, and the plaintiff, with knowledge of that fact, made a tender of the balance due on the contract, and filed his bill for specific performance, etc. The court, in holding that specific performance could not be decreed, said that the defendant was not bound to wait any longer upon the plaintiff, but had a clear right to exact immediate payment, or else to part with his interest in the land to another, in order to meet his own convenience or necessities. It was further said that, if the defendant had not parted with his interest before the filing of the bill, it might even have been a point deserving consideration whether the plaintiff was entitled to assistance when no accident, mistake, or fraud had intervened to prevent the performance of the contract on his

part, and when, after indulgence and after considerable subsequent delay, he had twice been requested to make payment and had omitted to do it.

Where the time of performance specified in the notice to the defaulting party is expressly assented to by the latter, the reasonableness of the notice can not be questioned by him. *Miller* v. *Rice,* 133 Ill. 315, 330, 24 N. E. 543.

In *Chabot* v. *Winter Park Co., supra,* it was said: "Although the complainant was in default, he made no reply whatever to the notice. If he had desired still further extension of time he should have let his wishes be known. If he considered that he had further rights in the matter, and that the Winter Park Company could not put a limitation of time upon him, he should have been prompt in the assertion of such rights. Failing to ask any further extension or to assert any right, he must be held as acquiescing in the demand contained in the notice, and as abandoning all rights he might have had to enforce the performance of the contract." In that case, the time fixed in the notice for the performance of the contract was nearly forty days, and the act to be done was the payment of a sum of money. This was held to be a reasonable limitation, though one party lived in Massachusetts and the other was in Florida.

At all times from the making of the contract up to the date specified in his notice as the limit of time for payment, the appellant was ready, willing, and able to receive and accept payment and notes and mortgage, and to execute to the appellee a deed of conveyance as stipulated in the contract. Being always met with the statement of inability of the appellee to pay, no occasion arose for express tender or offer of a deed of conveyance. Upon all the facts, we think the appellee is not entitled to the interposition of a court of equity, but should be remitted to his remedy at law.

The appellee has filed a cross-assignment of error in the overruling of his demurrer to certain paragraphs of answer, but, if the conclusion to which we have thus arrived be correct, there was no error in the ruling.

The judgment is reversed, and the cause is remanded, with instruction to state a conclusion of law in accord with the foregoing opinion.