David **STAINBROOK**, As Personal Representative of the Estate of Howard W. Stainbrook, Deceased, Appellant–Defendant,

v.

Trent **LOW**, Appellee–Plaintiff.

No. 40A05–0505–CV–257.

Court of Appeals of Indiana.

Feb. 13, 2006.

Michael L. Rogers, Rogers & Belding, North Vernon, for Appellant.

Christopher M. Tebbe, Hamilton & Tebbe Law Office, P.C., Greensburg, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

David Stainbrook, as personal representative of the Estate of Howard W. Stainbrook, appeals the trial court's grant of specific performance of a real estate agreement to Trent Low. We find (1) that the trial court properly denied the Estate's motion to dismiss for lack of verification because the Estate failed to bring their motion until the start of trial, and the claimant was available and prepared to testify at that time, and (2) that specific performance was an appropriate remedy in this case. Therefore, we affirm.

### Facts and Procedural History

The dispute before us arises from an Offer to Purchase Real Estate ("the Agreement") entered into by Trent Low and the deceased, Howard Stainbrook, on or about April 7, 2004. *See* Appellee's App. p. 1. The Agreement provides for the sale to Low of approximately forty acres of land in Jennings County owned by Stainbrook with a purchase price of $45,000.00. *Id.* Of the forty acres, approximately thirty-two acres are wooded and eight acres tillable.

Under the Agreement, Low was to pay the taxes on the property beginning with the installment due and payable in November 2004. *Id.* After receiving the Agreement as signed by Low but before signing the Agreement himself, Stainbrook consulted with a local attorney and added handwritten terms providing that Low would pay for a survey of the property and for all closing costs. *See id.;* Appellee's Br. p. 3; Tr. p. 44–45. Both parties ini-

tialed these changes,[1] Appellee's App. p. 1, and Low tendered a check dated April 3, 2004, to Mr. Stainbrook for the sum of $1000.00 as earnest money. A closing was scheduled for May 11, 2004, and Low made financial arrangements to allow him to meet his obligations under the Agreement. On May 8, 2004, Mr. Stainbrook died tragically and unexpectedly when a tractor rolled over on him.

Following Stainbrook's death, Low still wished to close on the real estate transaction. David Stainbrook ("the Executor"), Howard Stainbrook's son and the executor of his Estate, contacted Low and requested that Low withdraw his offer to purchase the property. Low declined and on September 9, 2004, filed a timely Claim Against Estate ("the Petition") with the probate court requesting enforcement of the Agreement on the terms agreed to by him and Stainbrook. Appellant's App. p. 14. The Petition contained no form of verification on its face. *Id.* The Executor disallowed this claim on September 16, 2004. The parties eventually submitted their dispute to mediation but were unable to reach an agreement.

A trial was held on March 9, 2005. At the start of the proceedings, the Estate moved to dismiss Low's Petition, arguing that it had not been properly verified as required by statute and so must fail. Tr. p. 3; *see* Ind.Code § 29–1–1–9 (covering verification of petitions to a probate court). Low responded by arguing that petitions should only be dismissed for failure to verify where the petitioner fails to show up

for trial. Tr. p. 4. Low indicated that he would verify the contents of the Petition via his in-court testimony, and so, he argued, the policy objectives of the statute would be met. *Id.* Following a recess and a review of both statutory and case law, the trial judge denied the Estate's Motion to Dismiss. *Id.* at 5–6; *see also* Order on Oral Motion to Dismiss, Appellant's App. p. 22.

The parties then stipulated into evidence the Agreement and the fact that Stainbrook was a competent adult when he signed the Agreement. Tr. p. 6–7. The parties presented evidence on the value of Stainbrook's land and of the timber rights therein, Tr. p. 19–21, 29–31; Def.'s Exs. A–C, and the Estate argued that the Agreement was ambiguous because it failed to account for the value of the timber rights, estimated at approximately $54,000.00. Tr. p. 30; *see also* Def.'s Ex. C. Therefore, according to the Estate, the Agreement was unfair and it would constitute unjust enrichment for Low to be allowed to purchase the property for the $45,000.00 price agreed to in the Agreement. Tr. p. 39. In addition, the Estate argued that the discrepancy in the value of the property without timber rights and the value of the property with timber rights constituted a mutual mistake of fact between Stainbrook and Low that nullified the Agreement. Tr. p. 20–21, 38. Finally, the Estate argued that Low's request for specific performance was inappropriate because Low had failed to fully perform under the Agreement, noting that he had not

---

**1.** The Estate suggests that Low may not have initialed these handwritten amendments before Stainbrook's death, stating, "there is no evidence when Trent Low approved those handwritten changes." Appellant's Br. p. 6 (citing Tr. p. 45–46). Nothing in the transcript, however, offers any evidence on the matter either in favor of or against Low's apparent position, i.e., that he initialed these changes before Stainbrook's death. *See* Tr. p. 45–46 (Estate's counsel objecting on hearsay grounds to testimony regarding the initialing of changes to the Agreement). Apart from this brief exchange in the transcript, the issue is not revisited in the trial court and the Estate does not otherwise raise it. To the extent, then, that the Estate seeks to argue this point on appeal, we decline to address it.

paid the November 2004 tax payment as provided. Tr. p. 18–19, 39. In his defense, Low testified that he attempted to pay the November 2004 installment but found that the Estate had already done so, and the Estate ignored his offer to reimburse it for that payment. Tr. p. 15, 18–19.

The trial court issued its judgment on March 18, 2005, finding for Low and ordering specific performance of the Agreement. The Estate filed a Motion to Correct Errors on March 29, 2005, arguing in pertinent part that the trial court erred in denying the Estate's Motion to Dismiss and finding that Low's Petition should not fail for lack of verification, in failing to find that the Agreement was void, and in ordering specific performance of a contract the Estate characterized as ambiguous and inequitable. The trial court denied the Estate's Motion to Correct Errors, and this appeal ensued.

### Discussion and Decision

The Estate raises three issues on appeal, which we consolidate and restate as follows: first, whether the trial court erred in denying the Estate's Motion to Dismiss because Low's Petition was not verified, and second, whether the trial court abused its discretion by granting Low's requested remedy of specific performance. We address each issue in turn.

---

**2.** In its brief, the Estate asserts, with regard to Low's Claim Against Estate, that "it was obviously intended by the claimant to be governed by I.C. [§ ] 29–1–14–2 (governing claims for damages against a personal representative)," rather than by Indiana Code § 29–1–14–21 (governing claims against an estate). The Estate does not provide any support for this contention, and we are unable to find anything in Low's petition that suggests this conclusion. Indeed, Low's Petition indicates that it is filed "against the above-captioned *estate*," not against the personal repre-

### I. Verification

■■■ The form of a claim against an estate is a matter within the discretion of the trial court, and we will not reverse its judgment on appeal unless it is shown that the trial court so abused its discretion as to prevent the case from being fairly tried upon the merits. *White v. Crow*, 245 Ind. 276, 198 N.E.2d 222, 225 (1964). Indiana Code § 29–1–14–21 states:

> When any person claims any interest in any property in the possession of the personal representative adverse to the estate, the person may file, prior to the expiration of three (3) months after the date of the first published notice to creditors, a petition with the court having jurisdiction of the estate setting out the facts concerning such interest, and thereupon the court shall cause such notice to be given to such parties as it deems proper, and the case shall be set for trial and tried as in ordinary civil actions.

Pursuant to this statute,[2] Low filed his Petition seeking specific performance of the Agreement in this case. As the Estate points out, Indiana Code § 29–1–1–9 provides:

> Every application to the court, unless otherwise provided, *shall be by petition signed and verified by or on behalf of the petitioner. No defect of form or substance in any petition, nor the absence of a petition, shall invalidate any*

---

sentative, and it requests relief in the form of "an order authorizing the personal representative to *complete the contract on behalf of the decedent by transferring the real property which is an asset of the decedent's estate to the purchaser in order to fulfill the terms of the contract and the obligation thereof.*" Appellant's App. p. 14 (emphasis added). In other words, Low requested specific performance by the Estate consistent with § 21, not damages from the personal representative as allowed under § 2.

*proceedings.* Interests to be affected shall be described in pleadings that give reasonable information to owners by name or class, by reference to the instrument creating the interests, or in another appropriate manner.

(Emphasis added). It is undisputed that Low failed to include any form of verification with his Petition upon filing with the trial court and that Low never attempted to amend the Petition to include verification. Arguing that verification is mandated by § 9, the Estate contends, then, that the Petition is invalid and the Estate's Motion to Dismiss should have been granted.

The Estate recognizes that "Indiana courts have, however, resorted to other conventions to avoid the harshness of a dismissal for lack of verification." Appellant's Br. p. 8. The Estate cites *In re Estate of Gerth*, 152 Ind.App. 273, 283 N.E.2d 578 (1972), and *Lincoln National Bank v. Mundinger*, 528 N.E.2d 829 (Ind. Ct.App.1988), both of which held that a claimant should be allowed to amend his complaint to add verification in order to avoid the dismissal of his claim. However, the Estate argues that "[i]n the case at bar, the claimant had ample opportunity to amend his petition before trial and post trial." *Id.* at 9. Under the facts before us, however, we do not believe that Low's "failure to act" by amending his Petition prevented adequate verification of the claim.

■■■ To be certain, an Estate has a right to request the written verification of an unverified petition if it makes a proper, timely motion for such an amendment. *See* Ind.Code § 29–1–1–9 cmt. 109 (clarifying portions of the comment, discussed *infra,* and stating that it "does not prevent

an opposing litigant from insisting upon the filing of an amended petition, nor does it dispense with proof of the necessary facts."). Discussing the verification requirement for wills, which we regard as analogous to the verification requirement for petitions, our Supreme Court remarked in *Prebster v. Henderson,* 186 Ind. 21, 113 N.E. 241, 241–43 (1916), *petition for reh'g overruled,* as to the timeliness of an opponent's objection to a lack of verification that:

It has been held by this court that the verification of the objections to the probate of a will is not jurisdictional. * * * the failure to verify was first raised by a motion in arrest of judgment and it was held that the objection came too late. The court said: 'Had an objection been made at the proper time, and in the proper manner, it would have been the duty of the court to have stricken out all averments relating to the execution of the will and the mental condition of the testator, *unless a verification of the paragraph had immediately followed the objections;* but, the appellees having joined issue, submitted to a trial, and a verdict having been returned, without any objection having been made, all right to object was waived. * * * *The objection should be made before entering upon the trial; otherwise it comes too late.'*

(*As quoted in In re Gerth's Estate,* 283 N.E.2d at 580–81 (emphases added) (citations omitted in original)). As *Prebster* suggests, once a case has reached trial, the time for an objection based on lack of verification has passed; if a claimant is available to give testimony and submit evidence and the case can then be tried on the merits, it is proper for a court to so try it.[3]

---

3. We are mindful here, as well, of Indiana Trial Rule 8(F), which reads as follows:

Construction of pleadings. All pleadings shall be so construed as to do substantial

Such was the case in the court below us. Low failed to properly verify his Petition when it was submitted, but the Estate failed to object to this lack of verification until the trial began. The Estate had an absolute right to insist upon verification; however, its reading of *In re Gerth's Estate* and *Lincoln National Bank* is too narrow inasmuch as it suggests that those cases hold that a trial court is limited to ordering a claimant to amend his complaint in order to satisfy the verification requirement and avoid the harshness of dismissal. Rather, where the circumstances merit, a trial court may employ a broader interpretation of "verification" in order to meet the statutory requirements of Indiana Code § 29–1–1–9.

 Here, the facts indicate that the Estate first objected to the Petition's lack of verification in its oral motion before the court *at the start of the trial.* The trial judge inquired as to Low's response, to which counsel for Low replied:

> I would agree that there's case law out there that says that a claim being filed and if the claimant does not show up to the trial once it's been disallowed by the [estate], it's set for trial, then the claim should be dismissed. But Mr. Lowe [sic] is here, *he's under oath, he's going to verify to the Court today what his claim is.* There's no question that the claim was timely filed and so the estate has an opportunity to respond to it and to and for this Court to appropriately address the claim as it is filed.

Tr. p. 4 (emphasis added). Whereas *Gerth's Estate* and *Lincoln National Bank* utilized the amendment process to allow for verification of the statements in a claimant's petition, Low's statement here proposed an alternative tool—verification via the claimant's own in-court testimony.

Because of the timing of the Estate's objection, we find this tool to have been appropriately utilized by the trial judge. Where an Estate chooses to forego its opportunity to insist upon written verification until the parties are at trial before the court, and where the claimant himself is available and prepared to testify in the very proceeding at which the Estate *first* brings the issue to the claimant's attention, we see no reason why a trial court should not accept the claimant's testimony as to the contents of his claim in lieu of written verification of that claim. At such a late stage, requiring a stay in proceedings to allow for the filing of an amended petition where a claimant is available to testify would be a waste of judicial resources.

We believe that this interpretation of Indiana Code § 29–1–1–9 is bolstered by the policy considerations underlying the statute. The statute itself remarks that while verification is an important procedural consideration in probate matters, "[n]o defect of form or substance in any petition, nor the absence of a petition, shall invalidate any proceedings." Further, the Indiana Probate Code Study Commission's ("the Commission") comment to § 9 ("Comment 109") states:

> It is the purpose of this section to require all applications to the court in probate matters to be verified, but at the same time not to permit a proceeding to be invalidated because of a defect in form or substance or by the absence of a petition. [ ] In civil procedural rules there has been a modern tendency to do away with a requirement of verification of pleadings. See, for example, Fed.R.Civ.P., Rule 11. However, in probate matters the situation is believed to call for verification. Often the proceeding is ex parte or is not contested and little or no evidence is introduced other

justice, lead to disposition on the merits, and avoid litigation of procedural points.

than the verified petition. Morover [sic], in such a case, if the petitioner is present in court, the verified petition not only may be accepted in lieu of his testimony, but may be substituted for a written record of such testimony.

The language of both the statute and the Commission's comment serve to inform us of the policy concerns behind § 9. Both indicate, first, that verification is regarded as an important procedural safeguard ensuring the accuracy and good faith of a court petition. But significantly, each then immediately follows this recognition with the qualification that a defect in form, or even the absence of a petition, should not invalidate court proceedings.

■ Then, in language that is particularly relevant to the case before us, the comment goes on to explain the need for verification in probate proceedings, noting that such proceedings are often "ex parte or [ ] not contested and *little or no evidence is introduced other than the verified petition.*" Further, the comment notes, even if a claimant is present at court proceedings on the matter, a verified petition may be accepted *in lieu of his testimony* or may be substituted for a written record of that testimony. All of this indicates that the policy requiring verification of claims is meant to secure the validity of the evidence presented to the court via the claim instrument, not to erect a procedural roadblock preventing a claim from going forward. *See Estate of Penzenik v. Penz Products, Inc.*, 749 N.E.2d 61, 64 (Ind.Ct. App.2001) ("[Indiana Code § 29–1–1–9] was intended to protect the integrity of probate court proceedings conducted after the filing of a faulty petition or in the absence of a formal petition.").

*In re Gerth's Estate* and *Lincoln National Bank* each employed the amendment process to meet the goals of § 9 and to preserve the integrity of the proceedings before the court. However, neither of those cases, nor any other case that has come to our attention, limits the tools available to our courts facing this issue to only amended pleadings. In the case at bar, where the Estate has delayed in bringing this oversight to the court's attention and where a claimant is under oath before the court and indicates his willingness to testify as to the contents of his petition, we fail to see how the concerns of § 9 calling for verification, i.e. ex parte proceedings where little or no evidence other than the petition is introduced or where the petition is itself substituted for a claimant's testimony, dictate that this case be thrown out. The trial court did not abuse its discretion when it denied the Estate's oral motion to dismiss at trial and essentially allowed Low to verify the contents of his petition via his in-court testimony. This case was properly tried on its merits.

## II. Specific Performance

■ The Estate also argues that the trial court erred by ordering the remedy of specific performance and requiring the Estate to transfer Stainbrook's property to Low as provided for under the Agreement. The decision whether to grant specific performance is a matter within the trial court's sound discretion. *Ruder v. Ohio Valley Wholesale, Inc.*, 736 N.E.2d 776, 779 (Ind.Ct.App.2000). Because an action to compel specific performance sounds in equity, particular deference must be given to the judgment of the trial court. *Id.* Specific performance is a matter of course when it involves contracts to purchase real estate. *Id.* A party seeking specific performance of a real estate contract must prove that he has substantially performed his contract obligations or offered to do so. *Id.*

The Estate sets forth four arguments against specific performance, which we ca-

tegorize as follows: (1) the pleadings do not clearly seek, nor does the judgment clearly award, specific performance of the Agreement; (2) Low failed to perform on his part of the Agreement in a manner sufficient to justify specific performance as a remedy; (3) there was a mutual mistake of fact with regard to the value of Stainbrook's property; and (4) the terms of the Agreement are unfair because of the difference between the parties' ages here and the potential that Low, as the younger party, could realize a windfall under the Agreement. We address each of these arguments separately.

## A. Clarity of the Remedy as Set Forth in the Pleadings and Judgment

■ The Estate first argues that Low's Petition is unclear as to whether he is actually seeking specific performance of the Agreement and that the trial court's judgment is unclear as to whether it is ordering specific performance. We find each of these documents to clearly set forth the relief intended.

Low's Petition first alleges that Low and Stainbrook entered into an agreement for the purchase of Stainbrook's property prior to Stainbrook's death, that Low substantially performed on the Agreement, and that the contract was not fulfilled because of Stainbrook's death. Low then requests the following relief:

> WHEREFORE, Trent Low prays that the Court enter an order authorizing the personal representative to complete the contract on behalf of the decedent by transferring the real property which is an asset of the decedent's estate to the purchaser in order to fulfill the terms of the contract and the obligation thereof.

Appellant's App. p. 14. The claim does not seek monetary damages of any kind or suggest any alternative form of damages that might satisfy the claimant. The language employed in the Petition unquestionably indicated that Low sought a remedy of specific performance.[4]

■ Likewise, the Judgment of the court finds for the Claimant, Low, and in a footnote indicates that "[t]he nature of Mr. Low's claim is one for the equitable remedy of specific performance. There was absolutely no evidence of fraud, actual or constructive, coercion, duress, undue influence, misrepresentation, or overreaching." Appellant's App. p. 6. Indeed, with Low's Petition before it, we find it unimaginable that the trial court could have perceived that Low was seeking anything other than specific performance of the Agreement, and so simply entering a judgment for Low, without further comment, would suffice to order the remedy. We regard the Judgment as one ordering specific performance and agree with the trial court's response to the Estate's argument in its April 18, 2005, Order on All Pending Issues, which stated "Although the Court does not believe the judgment is unclear, what is required is that the personal representative consummate the Offer To Purchase Real Estate...." Appellee's App. p. 5.

## B. Low's Performance

■ The Estate next contends that Low failed to preserve the remedy of specific performance here because he failed to perform sufficiently under the Agreement. Citing *Gyr v. Hagemann*, 130 Ind.App. 212, 163 N.E.2d 620 (1960), the Estate argues that "[i]n order to be entitled to specific performance, the claimant has the burden to prove *full and complete performance* on their part of the contract." Appellant's Br. p. 10 (emphasis added). Low, citing *Kesler v. Marshall*, 792 N.E.2d

---

4. We do not find a request for "authorization" to complete the contract to be inconsistent with a request for an order to the personal representative to "transfer" real property.

893 (Ind.Ct.App.2003), *reh'g denied,* argues that specific performance was appropriate because he either *substantially performed* his obligations under the Agreement or offered to do so, and this, rather than full and complete performance, is all that is required to preserve a claim for specific performance.

We agree with Low. Because Low offered to perform his obligations under the Agreement, specific performance was a proper remedy. In so concluding, we note that the Estate has conveniently omitted the language in *Gyr* indicating that an offer to perform is sufficient to avail a claimant of the remedy of specific performance. In this regard, the Estate argues that Low is not entitled to the remedy of specific performance because he did not pay the November 2004 property taxes. Appellant's Br. p. 10. Low, however, testified that he offered to make the tax payment and the Estate refused his offer. Tr. p. 18–19. The Estate did not dispute Low's testimony either at trial or in its brief. Hence, the trial court did not abuse its discretion by finding that Low offered to perform his contractual obligations under the Agreement.

The Estate also contends in its brief that specific performance was inappropriate because Low failed to tender the purchase price listed in the Agreement and arrange for a survey of the land before the closing date. Appellant's Br. p. 10. First, the Estate raises these issues for the first time on appeal, so they are accordingly waived. *See Mid–States Gen. & Mech. Contracting Corp. v. Town of Goodland,* 811 N.E.2d 425, 438 (Ind.App. 2004) ("An appellant who presents an issue for the first time on appeal waives the issue for purposes of appellate review."). Second, the Estate's argument assumes that a party may not be granted specific performance unless that party has fully and completely performed under the terms of the contract.[5] On the contrary, we have consistently held that specific performance is an appropriate remedy to a party who has *substantially* performed under the terms of the contract. *See SCI Indiana Funeral Servs., Inc. v. D.O. McComb & Sons, Inc.,* 820 N.E.2d 700, 707 (Ind.Ct. App.2005) ("a party seeking specific performance 'must prove that he has *substantially performed* his contract obligations or offered to do so.'" (citing *Kesler,* 792 N.E.2d at 896)) (emphases added), *trans. denied; Hardin v. Hardin,* 795 N.E.2d 482, 487 (Ind.Ct.App.2003); *Claise v. Bernardi,* 413 N.E.2d 609, 612 (Ind.Ct.App. 1980). Regarding Low's payment of the purchase price, we note that Low testified that he had obtained financing before the closing date, Tr. p. 14–15, and there is nothing in the record to indicate that he was not prepared to meet his financial obligations at that time. Further, in his brief to this Court, Low indicates that shortly after Stainbrook's death, the Executor of the Estate requested that Low withdraw his offer, and Low declined to do

---

5. *Gyr* and two cases that predate it suggest that a party must either *fully and completely perform* or offer to perform before specific performance is appropriate. *Shelt v. Baker,* 79 Ind.App. 606, 137 N.E. 74, 77 (1922), *reh'g denied; Boldt v. Early,* 33 Ind.App. 434, 70 N.E. 271, 274 (1904). After reviewing these cases, we are convinced that Indiana permits a party who has *substantially performed* under a contract to be granted the remedy of specific performance. *Gyr, Boldt,* and *Shelt* are all distinguishable from the case at bar. In *Gyr,* the buyer was prepared to fully and completely perform under the contract; therefore the court did not reach the question of whether substantial performance was adequate. *Boldt* and *Shelt* both involved sales installment contracts and the failure on the part of each buyer to timely tender installment payments. Under the terms of each contract, a breach on the part of the buyer required that he pay the full amount of the contract, and this was the "full performance" ordered by the court.

so, indicating that he was prepared to go forward. Appellee's Br. p. 4. Regarding Low's failure to order a land survey, the Estate presents no evidence to suggest that this matter, particularly in isolation, reaches the level of failure to perform under the Agreement, and we decline to sanction such a rule. Low substantially performed these duties under the terms of this contract.

■ The trial court did not abuse its discretion in ordering the remedy of specific performance. Low both offered to perform and substantially performed his contractual obligations.[6]

### C. Mistake

■ The Estate next argues that there was a mutual mistake of fact among the parties to the Agreement and so the trial court should have denied Low's request for specific performance. Specifically, the Estate contends that the parties were mistaken as to the value of the property because they failed to take into account the value of any timber rights to the land, and therefore the purchase price set in the Agreement is unreasonably low and cannot be enforced.

■ The doctrine of mutual mistake provides that "[w]here both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Perfect v. McAndrew,* 798 N.E.2d 470, 478 (Ind.Ct. App.2003) (citations omitted). "It is not enough that both parties are mistaken about any fact; rather, the mistaken fact complained of must be one that is 'of the essence of the agreement, the *sine qua non,* or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties.'" *Jackson v. Blanchard,* 601 N.E.2d 411, 416 (Ind.Ct.App.1992) (quoting 17A Am.Jur.2d *Contracts* § 213 (1991)).

■ The evidence presented at trial established that the value of the property plus the value of the timber rights upon the property is estimated at approximately $100,000.00–$120,000.00. The Estate argues that the contract price of $45,000.00, then, is too low; in other words, there was inadequate consideration here to support the Agreement. It is generally inappropriate, however, for courts to inquire into the adequacy of consideration. *Tanton v. Grochow,* 707 N.E.2d 1010, 1013 (Ind.Ct. App.1999). We find nothing in this case that suggests we should forego this basic tenet of contract law. Low argues, and we agree, that the parties did not enter the Agreement subject to any mistake regarding the value of the property, but rather that they negotiated what they believed to be a fair price, and that this price represents a reasonable measure of the property's value. Indeed, in reviewing the appraisals included in the record and the Estate's argument, there is little indication that timber rights are ordinarily taken into consideration in sales contracts in this geographic area and we cannot say that the contract price was unreasonable. As any argument that a court should inquire into the consideration underlying a contract

---

**6.** The Estate also argues that it is relevant here that Stainbrook never cashed the earnest money check given to him by Low. The Estate cites no authority suggesting that a seller's failure to cash an earnest money check prior to closing gives him the right to void a real estate purchase agreement. Having failed to present an argument based on relevant authority, the Estate has waived this argument. *See* Ind. Appellate Rule 46(A)(8)(a). That said, we also note that we are unable to find, through our independent research efforts, any authority supporting the Estate's contention.

must convince us that the agreed-upon consideration is wholly insufficient, *see Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 759 (Ind.Ct.App.2002), we do not find cause for reversal in the Estate's timber-rights argument. The trial court did not abuse its discretion as to this issue.

### D. Fairness

The Estate finally argues that the trial court should not have awarded specific performance here because the Agreement between Low and Stainbrook was unfair. The Estate apparently contends that a significant age difference coupled with evidence that the younger party will receive a windfall if the contract is enforced, raises a presumption that the contract was unfair. Therefore, since Low was twenty-two years old and Stainbrook was eighty-nine at the time of contract,[7] and because the combined estimates of property and timber values was as high as $121,000.00 and Low and Stainbrook had agreed to a $45,000.00 purchase price, the Estate argues that the trial court should have found the contract to be unfair or unconscionable and to have found that Low would be unjustly enriched by its execution. Reviewing the particular circumstances before us and our discussion above regarding the property value, we cannot agree.

The Estate cites several cases to support its assertion. *See* Appellant's Br. p. 11–13. However, we note that although each case cited resulted in a denial of specific performance where one party was elderly, each case also found that an inequality between the parties existed because the elderly party was either incompetent or, at the least, unable to engage as an equal in bargaining with the younger party. *See, e.g., Ames v. Ames*, 46 Ind. App. 597, 91 N.E. 509, 512 (1910) ("[W]here ... it is the young and vigorous that are seeking to enforce an advantageous bargain of large consequence, *against one who at the time was in no mental condition to engage in business matters of such moment,* such court will scrutinize all the circumstances and details of the transaction and resolve all doubtful questions in favor of the weaker suppliant." (emphasis added)). The Estate presents no evidence to indicate that Stainbrook was such a "weaker suppliant." Indeed, the Estate stipulated at trial that Stainbrook was competent at the time of contract, and evidence was presented that Stainbrook consulted a lawyer regarding the Agreement and that he insisted upon several handwritten changes to the contract that benefited his own interests. We find no support for the Estate's contention that Stainbrook was anything less than a party entirely capable of entering into this Agreement, nor for its contention that the Agreement was unfair. The trial court, then, acted within its discretion in finding the Agreement to be a valid and enforceable contract.

Finding that the trial court properly denied the Estate's Motion to Dismiss for Lack of Verification and properly awarded specific performance in this case, and for the reasons set forth above, we affirm the decision reached below.

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.

---

7. The Estate cites Stainbrook's age at the time of contract at eighty-seven years in its Statement of Facts but as eighty-nine years in its Argument. As this minor discrepancy is irrelevant to our analysis of this issue, we proceed under the assumption that Stainbrook was eighty-nine years old.